WILLIAM HUDSON'S ADMINISTRATORS v. WILLIAM A. FARRIS.

Where F entered into a covenant with S, whereby the latter agreed to locate the head-right certificate of F, and to obtain a patent for one-fourth of the land, the covenant was not transferable by the succession of S, so as to enable the assignee to perform the services without the consent of F, and thus entitle himself to the benefit of the covenant.

A contract to locate land on shares is a purely personal covenant, not assignable in equity or law.

APPEAL from Fayette. The case was tried before Hon. GEORGE W. SMITH, one of the district judges.

In a case so purely of fact, spread over a record so voluminous, and depending so entirely upon its own peculiar circumstances, the *Reporter* could not hope to give a clearer statement of the facts than is given in the opinion of the court.

*William G. Webb,* for the appellants, argued the case upon the facts.

*Wm. P. Jarmon,* for appellees.

LINDSAY, J.—The record in this case is very voluminous, unnecessarily so for the matter of law involved in the case. There are petitions and amended petitions, and answers and amended answers, until the record is swelled to undue proportions, and the labors of this court are rendered unnecessarily onerous in arriving at the facts and the law of the case, so as to adjudicate understandingly upon the

rights of the parties in the controversy. But after a careful examination of the record, as well as of the briefs of the attorneys in the cause, we find that the appellee, W. A. Farris, employed one John W. Scallorn, by a written agreement, entered into on the 15th day of June, 1837, to locate and survey the head-right of the said Farris as a colonist; and the locator was to get the title to himself for one-fourth of said head-right if the laws would permit it, and if they did not permit it, then the said colonist, when he procured his title, bound himself to convey to the locator, if he was required to do so, one-fourth of the land. The locator was to pay all the fees in obtaining the title for the colonist. It appears that the locator or the employé of Farris surveyed a part of the said head-right, which lay within the county of Fayette, and which had been previously surveyed by one Borden, and did nothing more towards carrying the colonist's head-right into grant up to the time of his death, at Dawson's defeat, in 1842. By the proof it appears that shortly after that event the colonist, Farris, and the widow and administratrix of Scallorn, came to an understanding and agreement about the contract for locating and surveying the head-right, in which it was agreed that Farris should attend to the location, survey, and obtention [obtaining] of the patent himself, and the parties made a settlement of the mutual liabilities of Farris and said intestate. Some time afterwards, eight or ten years, the administratrix and her second husband, with whom she had intermarried, assigned and transferred the bond of Farris to Scallorn to one J. P. Hudson, who died shortly after, and his executors procured the patent for the head-right of Farris from the land office, paid the fees therefor, and delivered it to the colonist, and now his heirs and personal representatives are seeking by this suit a specific enforcement of the contract between Farris and Scallorn in their favor as the representatives of the assignee of Scallorn's administratrix, upon the ground that the said

Hudson had agreed to substitute himself in the place of said Scallorn, to perform the duty engaged to be performed by the said Scallorn, and that without the assent of the other party to the contract. Such was the nature of the suit in which the appellee obtained a judgment in the court below, and, as we think, justly and rightfully. The original contract was no doubt based upon the skill, the intelligence, and the practical knowledge of the locator, in the estimation of the covenantor, and were constituent elements, in consideration for which the promise to convey one-fourth of the head-right was made whenever the title was procured. No one could volunteer to do what had been undertaken by another without the express assent of the party for whose benefit it was proposed to be done. This was one of those personal covenants that is neither assignable in equity nor at law. In the original contract the covenants were mutual and dependent, and the failure of either of the parties to fulfill his obligation for any cause not to be repaired by the undertaking of a third party without the consent of the other party to the contract. We therefore affirm the judgment of the court below.

Judgment affirmed.