MAY v. ANTHONY.

(Court of Civil Appeals of Texas. Dallas. Nov. 23, 1912.)

1. TRIAL (§ 191*)—INSTRUCTIONS — INSTRUCTIONS ASSUMING FACTS.

Rev. St. 1911, art. 1971, directs that the trial court shall submit all issues of fact to the jury. In an action for conversion, where the evidence was conflicting whether plaintiff tendered the proper amount due under an agreement by which defendant had possession of the property, a special instruction that if, when plaintiff tendered defendant $40, the defendant had already converted the property, so that he could not return it, plaintiff was entitled to recover, was erroneous as withdrawing from the jury the issue whether plaintiff had tendered the amount required by the agreement.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. § 191.*]

2. TRIAL (§ 191*)—INSTRUCTIONS—ASSUMING FACTS.

In an action of conversion, where the evidence whether defendant, prior to plaintiff's tender, had sold all or some of the property was conflicting, a charge that if defendant, at the time of such tender, had sold or converted the property and could not by reason of his acts return it, plaintiff was entitled to damages, was erroneous in that it assumed that defendant "by reason of his acts" was liable for all the property in the event he had sold any part of it, although the amount tendered was insufficient.

[Ed. Note.—For other case, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. § 191.*]

3. BAILMENT (§ 16*)—CONVERSION BY BAILEE.

Where defendant was in lawful possession of property and entitled to hold it until a certain payment was made by plaintiff, there

---

could be no conversion until the correct amount was tendered and paid.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 67–74; Dec. Dig. § 16.*]

4. TROVER AND CONVERSION (§ 34*)—PLEADING—ISSUES, PROOF, AND VARIANCE.

Where the petition in an action for conversion charged that plaintiff was the owner of the property, and that the defendant on or about May 10, 1909, unlawfully converted it to his own use, proof of conversion in June, 1910, or August, 1910, was a fatal variance.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 207–214; Dec. Dig. § 34.*]

5. PLEADING (§ 162*)—SUPPLEMENTAL PETITION—PURPOSE.

The only purpose of a supplemental petition is to allege new facts in reply to those alleged by the defendant in his pleading.

[Ed. Note.—For other case, see Pleading, Dec. Dig. § 162.*]

6. PLEADING (§ 162*)—AMENDED PETITION—PURPOSE.

The purpose of an amendment to a petition is to add something or to withdraw something from what has been properly pleaded, so as to remedy a defect or correct an erroneous statement; and, where plaintiff intended to correct the date of an alleged conversion, it should have been done by amendment of his original petition and not by supplemental petition.

[Ed. Note.—For other cases, see Pleading, Dec. Dig. § 162.*]

Appeal from Hill County Court; J. C. Lumpkins, Judge.

Action by F. Anthony against John May. Judgment for plaintiff, and defendant appeals. Reversed and remanded for new trial.

W. H. Brown, of Ennis, and Supple & Harding, of Waxahachie, for appellant. T. H. Collier, of Ennis, and Will Hancock and Tom Whipple, both of Waxahachie, for appellee.

RASBURY, J. Appellee sued appellant in the trial court for the conversion of certain butcher's tools and fixtures, alleged to have been converted by appellant on or about May 10, 1909, and claimed to be of the reasonable fair cash market value of $587.50. For answer the appellant, in effect, pleaded that appellee rented from him a storehouse in Ennis for the year 1909, agreeing to pay therefor $25 per month in advance, to be used by appellee as a butcher's shop, who went in possession of the storehouse under said agreement and remained there until April 10, 1909, at which time he abandoned the premises and commenced removing the property alleged to be converted therefrom, notwithstanding he was then due appellant one month's rent and was bound as well for the balance of the term, whereupon appellant procured the issuance of a distress warrant and levied same upon said property, but that a few days thereafter the parties agreed that appellant should withdraw the proceedings and appellee should pay the rent then due and appellant should retain the property levied upon until appellee had adjusted all rents due under the lease, including all costs and expenses incident to the distress proceedings, appellant to re-rent the premises to the best advantage until final adjustment for the benefit of appellee. Appellant further alleged that he observed said agreement in good faith, and that at the time he was sued for conversion after allowing appellee for all sums collected by him as rents and charging him with all expenses and costs, appellee was due appellant $110, and until said sum was paid he was entitled to possession of said property and had a contract lien thereon as well as the landlord's lien. The appellee in response to appellant's answer by supplemental petition admitted, in effect, the agreement alleged by appellant, except as to payment of costs and expenses incurred by appellant, and charged that on August 1, 1910, he was due appellant only $40, which amount was on said date tendered to appellant and possession of his property demanded, which sum of money appellant declined, and at the same time refused to deliver to appellee his said property. The foregoing, in our view of the case, is a sufficient statement of the pleading, although other incidental matters were raised by the pleading. The case was tried before a jury and verdict was for appellee.

From an inspection of the record it appears to be undisputed that appellee leased from appellant for the year 1909 a storehouse in the town of Ennis, and after moving therein was preparing to abandon same and remove his property therefrom, when the appellant, on April 10, 1909, levied a distress warrant upon the property, asserting against same the landlord's lien as security for the payment of his rent for the unexpired term; that a few days subsequent thereto appellant and appellee agreed upon an adjustment of their affairs, whereby appellee delivered the property so levied upon to appellant to be held by him until he had received the full amount of rent agreed to be paid by appellee for the year 1909, either at the hands of appellee or from money derived from re-renting same to other persons.

The main issue in the case on the trial was the fact of conversion and incidentally, the time of the same, if any there was. As to whether there was a conversion of the property by appellant or a mere holding of the same under the agreement with appellee depended wholly upon the amount actually due appellant by appellee upon his rent contract at the time he claims he tendered appellant all the rent due him and demanded his property and at which time appellant refused the amount tendered, claiming the amount was insufficient, and refused to deliver appellee his said property.

The material testimony bearing upon those

issues is as follows: Arch Busby testified that on June 6, 1910, appellee tendered appellant $40, claiming same was all he owed him, which was refused by appellant, who claimed there was due him $125 for rent, costs, and attorney's fees, and refused to deliver possession of the property unless said amount was paid. Charley Jeffers testified that appellant told him on June 18, 1910, to tell appellee that unless he removed the ice box from his storehouse he would throw same into the street, etc.; that he went with appellee for said purpose, and they were prevented from doing so by appellant after having loaded a portion of the same. Appellee, Anthony, testified that he expected appellant to hold his property until all the rent for 1909 was paid; admitted removing a portion of the property in January, 1910. Also testified that in company with the witness Jeffers he tendered appellant $40, being all he owed, which was declined and possession of his property refused him. He does not testify when the tender was made, unless it may be inferred that he did so on the date testified to by Jeffers. Appellant, May, testified that under the agreement appellee was to pay all rent, expenses, and costs of suit, and that at the time of the tender appellee was due him $110, of which amount $85 was for rent and the balance represented costs and attorney's fees incurred in the distress proceeding. Appellant based his conclusions as to what was due largely upon his books. Appellee based his conclusions upon what he had paid and information secured as to moneys collected by appellant from tenants.

[1] The pleading and the testimony standing as we have indicated, the court by its main charge, after reciting the agreement under which appellant held the property, told the jury: "And (if) you further believe * * * that at any time subsequent thereto plaintiff paid such amounts, if any, as were agreed between them was due to defendant, or if you believe that plaintiff tendered $40 to defendant on August 10, 1910, and that same, if accepted, would have satisfied the indebtedness then due by plaintiff to defendant under their former agreements, if any, * * * and defendant failed and refused to deliver the property of plaintiff held by him, then he would be guilty of converting such property so held, if any, and you will find for plaintiff such damages, if any, as he may have suffered thereby," etc.

At the request of the appellee the trial court supplemented its main charge and further told the jury: "If you believe from the evidence that defendant, John May, at the time plaintiff made to him a tender of $40, if he did, had already sold all or some of the property or converted the same * * * and could not by reason of his acts return the property, * * * then you will find for the plaintiff his damages as shown by the evidence, and, if such damages exceed the amount due as rents, you will find for the plaintiff such excess. * * *"

The giving of this special charge is assigned as error. In our opinion the charge was probably misleading in that it assumed the correctness of the appellee's version of a sharply controverted fact, to wit, the amount of rent due by appellee. A fair analysis of the special charge is that the jury were told that, if the appellant had converted some or all of the property at the time appellee offered to pay $40, then a judgment should follow for the appellee, while under the pleading and evidence the jury were not entitled to allow any sum in damages until it had first determined if appellee had tendered the correct amount of rent, and that question was in sharp conflict; the appellee contending that he only owed $40, and the appellant maintaining he owed $110. The effect of the special charge was to destroy the force and effect of that portion of the main charge that told the jury there could be no conversion of the property unless the sum tendered by appellee "would have satisfied the indebtedness then due by plaintiff under their former agreement." Article 1971, R. S. 1911, is mandatory, and, among other matters, directs that the trial judge "shall submit all controverted questions of fact solely to the decision of the jury." Orange Lumber Co. v. Thompson, 113 S. W. 565.

[2] We are further of opinion that the second objection to said special charge is correct. One of the incidental questions in the case was whether or not appellant had prior to the tender of the $40 sold all or some of the property; the testimony in that connection being sharply conflicting and tending to show from the appellant's standpoint that the property was intact, except that claimed to have been removed by the appellee. As applied to this feature of the suit, the charge clearly assumes that appellant "by reason of his acts" is liable for all said property in the event he has sold any one of the articles and makes him liable, even though the amount tendered was insufficient.

[3] Appellant was in lawful possession of the property and entitled to hold same until his rent was paid, and it seems to us there could not be a conversion until the correct amount of rent was tendered. In truth, it would seem that appellee could never be in a position to sue for conversion under the facts in the record until the rent was paid, and any instruction from the court permitting a recovery otherwise would be error; and the jury should have been told that they must first find the correct amount had been tendered before considering other matters which might under a different state of facts alone constitute conversion.

[4] We are also of opinion that the court erred in instructing the jury to find for appellee if in their opinion the appellant converted said property at any time subsequent

to the agreement made between the parties, or at any time appellee might be able to show he had tendered the amount of rent due. While our rules of pleading and practice are almost as broad as any occasion may demand at the same time for reasons that are elementary, there must be at least certainty and definiteness. The petition charged that appellant was the owner of the property, etc., and "that the defendant on or about the 10th day of May, 1909, unlawfully and willfully took possession of said property" and converted same to his own use. It seems to us that proof of conversion in June, 1910, the time when Arch Busby testified the tender was made, or in August, 1910, when the pleading alleged the tender was actually made, are both too far removed from "on or about the 10th day of May, 1909," to afford a basis for the entry of a judgment upon the pleading in this case.

[5, 6] The most we care to say in reference to the appellant's first assignment of error is that appellant is, of course, correct in asserting that the only purpose of a supplemental petition is the allegation of new facts not before alleged in reply to those alleged by the defendant in his pleading. And in that connection it is not improper for us to pursue the subject and say that the purpose of an amendment to the petition is to add something to or withdraw something from that which has been previously pleaded, so as to perfect that which is or may be deficient or to correct that which has been incorrectly stated. And it would follow, under these rules, that, if appellee intended to correct the date of the alleged conversion, it should have been done by an amendment of his original petition and would have been improper in a supplemental petition.

We have carefully examined the other assignments of error, and we find nothing complained of therein that will not probably be corrected on another trial.

Because of the errors indicated, the judgment of the trial court is reversed, and the cause remanded for another trial.