CENTRAL BRASS & STAMPING CO. v. STUBER et al.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1915.)

No. 2120.

1. PATENTS ☞192—SUIT FOR INFRINGEMENT—TITLE TO SUSTAIN.

Defendants and another, who were joint owners of a patent, entered into a contract by which defendants were given the exclusive right to manufacture the patented article, paying a royalty to the other party, who was the inventor and who was to have charge of the sales. It was provided that defendants should not authorize the manufacture by any person not named in the contract without the consent of the other party, who was given the right, in case defendants did not manufacture sufficient to supply the demand, to himself take over the exclusive manufacture, which right he exercised and afterward assigned his interest in the patent to complainant corporation. The contract contained no provision as to use of the patented article. *Held*, that it did not divest defendants of their interest in the patent, and that the assignment to complainant gave it no standing to maintain a suit for infringement against defendant.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 269; Dec. Dig. ☞192.]

2. ASSIGNMENTS ☞19—EXECUTORY PERSONAL CONTRACTS.

A contract which involves a relation of personal confidence is not assignable.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 28–31; Dec. Dig. ☞19.]

3. ASSIGNMENTS ☞19—CONTRACTS—ASSIGNABILITY.

An executory personal contract is not made assignable by the use of the terms "assigns" and "heirs."

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 28–31; Dec. Dig. ☞19.]

4. PATENTS ☞192—JOINT OWNERS—TITLE AND RIGHTS.

The owner of an undivided interest in a patent cannot maintain a suit to restrain another part owner from manufacturing thereunder or from authorizing others to do so.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 269; Dec. Dig. ☞192.]

Appeal from the District Court of the United States for the Northern Division of the Southern District of Illinois; J. Otis Humphrey, Judge.

Suit in equity by the Central Brass & Stamping Company against Joseph Stuber and Henry C. Kuck. Decree for defendants, and complainant appeals. Affirmed.

W. V. Tefft and John M. Elliott, both of Peoria, Ill., for appellant. D. W. Evans, of Peoria, Ill., for appellees.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

KOHLSAAT, Circuit Judge. The amended bill in this case was filed by appellant to restrain infringement by appellees of patent No. 946,703, issued to L. R. Nelson and appellant on January 18, 1910, for a hose connector, etc. The District Court decreed that appellant by reason of the state of the title to the patent was without standing to maintain the bill and that the cause be dismissed for want of equity.

Appellant's title was acquired in the following manner: The patent as above stated was issued to one L. R. Nelson and to appellees, Nelson taking a one half interest, and appellees the remaining half by assignment before issue. By contract, dated November 13, 1909, between the parties, it was agreed that appellees should have the exclusive right to manufacture the connector in question during the life of the patent, with the proviso:

"That either or both of the said parties of the first part, their heirs or assigns, shall not make any arrangements which will enable any other party, not mentioned by name in this contract, to manufacture any of the above articles so as to permit competition in the manufacture of the said articles without the consent of the said party of the second part" (Nelson).

By said contract, certain royalties were to be paid to Nelson, who was given charge of the sale of the manufactured articles and the approval thereof, and appellees were to fix selling prices so long as they were acting as exclusive manufacturers. By clause 6 of the contract it was provided that, in case of failure of appellees to pay the agreed royalties or to manufacture the articles in question in such quantity and manner as to supply the demand created by Nelson or otherwise, then Nelson should have the exclusive right to manufacture said articles upon certain conditions named. Clause 7 provided that if Nelson should "devote his time to the general interest" of appellees, including the sale and approval of the goods made under the contract as appellees might direct, then appellees would pay him (Nelson) a weekly sum of not less than $15, exclusive of royalties, "the party of the second part (Nelson) to receive pay for only such time as he may give under the directions of the said parties of the first part" (appellees). In accordance with the terms of said contract, Nelson, claiming that appelleee had failed to comply with the terms thereof, took over the exclusive manufacture of said articles and proceeded to manufacture the same. Afterwards Nelson organized the appellant corporation, to which, on August 28, 1912, he assigned all of his right, title, and interest in and to said contract and all his claims, demands, and rights of action against appellees growing out of said contract, with the right to sue for the same; Nelson having previously and on June 1, 1911, assigned to appellant all his interest in and to said patent, which he described as being an "undivided one-half interest therein." This was the condition of the appellant's title at the time this suit was instituted, viz., August 31, 1912.

It is appellees' contention: (1) That no rights passed to appellant by virtue of the assignment to it of said contract; and (2) that appellees, being owner of a one half interest in said patent, appellant, the owner of the other half, had no right of action against them.

[1, 2] For support of the first proposition, it is urged that the contract of November 13, 1909, was of such a nature that it was not

within Nelson's power to transfer it. By the contract itself Nelson was prohibited from making any arrangements which would enable any other party, not named in the contract, to manufacture any of the enumerated articles so as to permit competition without consent. By the election of Nelson to take over appellees' right of exclusive manufacture, appellees were placed substantially in the shoes of Nelson, as at first arranged; the circumstances of the parties being reversed. The contract further required that Nelson should work for the interests of appellees, for which he was to be paid a salary. Nelson being the patentee and thoroughly advised as to the merits of the patented device, and also being so solicitous of its success as to take advantage of the provision of the contract in that respect, might well have been considered by the appellees as best equipped to push the device upon the market and make the investment remunerative. They were entitled to his personal efforts in that behalf. As is said in Arkansas Smelting Company v. Belden Mining Company, 127 U. S. 387, 8 Sup. Ct. 1309, 32 L. Ed. 246:

"Every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent."

And again:

"The rule upon this subject, as applicable to the case at bar, is well expressed in a recent English treatise. 'Rights arising out of contract cannot be transferred if they are coupled with liabilities, or if they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided.' Pollock on Contracts (4th Ed.) 425)."

[3] It will be noted that the contract gives the right to manufacture, and to sell. It nowhere conveys exclusive use. Nor can the right to exclusive use be implied from the facts of the case. It does use the terms "assigns" and "heirs," but, as was said by the court in Wooster v. Crane, etc., 73 N. J. Eq. 22, 66 Atl. 1093, the contract was not made assignable by the use of those terms as to its unexecuted subject-matter, if in fact it was a personal contract. If it be contended that the contract worked a sale of the whole patent, or of appellees' interest therein, it is sufficient answer to say that the failure to convey exclusive use, and the provisions of the contract, and especially that of clause 7 thereof dealing particularly with regard to Nelson's duties to appellees in the premises, clearly bring it within the rule as to nonassignability of a personal contract; and we therefore concur in the decision of the District Court that appellant took no rights through the assignment. Waterman v. Mackenzie, 138 U. S. 253, 11 Sup. Ct. 334, 34 L. Ed. 923; Excelsior Wooden Pipe Co. v. Seattle, 117 Fed. 140, 55 C. C. A. 156; Pope Mfg. Co. v. Gormully Mfg. Co., 144 U. S. 224–251, 12 Sup. Ct. 632, 637, 641, 36 L. Ed. 414, 419, 420, 423. We find no sufficient warrant in the evidence for holding that appellees at any time acquiesced in the attempt to assign. On the contrary, the record shows that they persistently refused to accept royalty from appellant, when and as soon as they were advised of the attempted assignment.

[4] As owner of a one-half interest in the patent, appellant had no standing to restrain appellees from manufacturing under their

ownership of the other one-half thereof, or from authorizing others to do so. Blackledge v. Weir & Craig Mfg. Co., 108 Fed. 71, 47 C. C. A. 212; Drake v. Hall, 220 Fed. 905, 136 C. C. A. 471, decided by this court at the October session of the present term.

Some contention is made in appellant's brief to the effect that Nelson was practically the owner of the appellant corporation, and that the assignment of the contract to appellant was not legally within the foregoing rule as to nonassignability of personal contracts. Such, however, is not the law. The transaction stands in the same situation as though appellant were a stranger and entirely unconnected with Nelson.

It therefore follows that appellant had no legal standing to institute or maintain the bill herein, and that such disability still exists, and the decree of the District Court must be, and is, affirmed.