### TEXAS ICE & COLD STORAGE CO. v. McGOLDRICK. (No. 7559.)

(Court of Civil Appeals of Texas. San Antonio. April 28, 1926. Rehearing Denied May 26, 1926.)

**1. Injunction** ⬅128—**In action to restrain breach of contract not to engage in ice business, evidence held not to sustain finding that defendant's only duty in new ice company was that of manager.**

In action to restrain defendant from engaging in ice business in violation of contract, finding by trial court that defendant's only duty in new ice company was to manage the plant *held* contrary to undisputed testimony by defendant that he intended to sell ice to all peddlers.

**2. Contracts** ⬅202(2)—**Contract prohibiting defendant from soliciting trade or selling ice prohibited defendant from engaging in the ice business anywhere in the city.**

Contract prohibiting defendant from engaging in ice business by soliciting trade or selling ice anywhere in city is unconditional, and prohibited defendant from engaging in the ice business anywhere in the city.

**3. Trial** ⬅395(1).

Finding discredited and nullified by its own terms will be disregarded.

**4. Contracts** ⬅117(2).

Contract whereby vendor of ice business employed by purchaser agreed not to engage anywhere in the city in similar business for two years after leaving purchaser's employ *held* valid.

**5. Injunction** ⬅61(2).

Acts of defendant, showing intention to violate agreement by which he agreed not to engage in the ice business within city for two years after leaving plaintiff's employ, will be restrained.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Suit by the Texas Ice & Cold Storage Company against E. H. McGoldrick. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

Etheridge, McCormick & Bromberg and G. W. Schmucker, all of Dallas, for appellant.

Mike T. Lively and O. F. Wencker, both of Dallas, for appellee.

SMITH, J. E. H. McGoldrick built up a retail ice business in the city of Dallas, and in December, 1918, sold out to the Texas Ice & Cold Storage Company, operating an ice plant in that city. The sale was evidenced by a written bill of sale, by which McGoldrick conveyed to the corporation six ice wagons, nine mules, five sets of double harness, one set of single harness and all his ice tools and equipment, "together with five ice routes and good will of said business." It was stipulated in the instrument that—

"This bill of sale is made in conjunction with an employment contract with said Texas Ice & Cold Storage Company of even date, and I hereby agree that for the term of two years immediately after ceasing for any cause whatsoever to be in the employ of said company, I will not engage in the ice business in any manner whatsoever within the city limits of Dallas, Texas, either on my own account, or as an agent, or employee of any person, persons, corporation, or corporations by canvassing for and soliciting trade by selling or delivering ice."

It was stipulated in the contemporaneous agreement that the corporation thereby employed McGoldrick for the purpose of "superintending the city delivery in the sales of ice" at the company's plant, and to perform such other duties as may be required of him by the company. The term of employment was not fixed, but it was provided, among other things, that—

"In consideration of the premises the employee agrees that for the term of two years im-

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

mediately after ceasing, for any cause whatsoever, to be in the employ of the company he will not engage in the ice business in any manner whatsoever within the city limits of Dallas, Texas.

"This agreement is made for the protection of the good will which may have been or may hereafter be acquired in said business, and in consideration of this agreement said employee does hereby assign and convey to the company all interest in the good will and business for a period as above mentioned.

"It is agreed that either party may terminate this agreement upon thirty days written notice at any time after eight months from this date.

"This agreement is made in conjunction with a bill of sale made to the company by the employee of even date to which is hereto referred."

Under this contract McGoldrick remained in the employment of the ice company for a period of six years, during which his salary was increased, from time to time, from $125 a month until it reached and remained at $250 a month. On the ground of lax business and the necessity for retrenchment, the ice company dispensed with McGoldrick's services in November, 1924. Shortly afterwards the ice company brought this suit, and, after setting up the facts stated above, and alleging that McGoldrick was about to engage in the ice business in Dallas in violation of his contract, prayed for injunction and damages against McGoldrick. Without the intervention of interlocutory orders a final hearing was had before the court, without a jury, and the injunction and all other relief was denied. The Ice & Storage Company has appealed.

Appellant based its complaint upon the contention that appellee was threatening and was about to engage in the manufacture and sale of ice in competition with appellant in violation of his agreement not to engage in the ice business in Dallas, for himself or for others, within a period of two years following the termination of his services with appellant.

Upon the hearing appellee testified that he and others were organizing a concern to manufacture and sell ice. He is to be the manager of the new company in charge of all its activities, and of all its employees, except the "secretary and treasurer, and a man to run the office and look after the financial end." Upon the issue of whether his proposed activities would be in violation of his agreement not to "engage in the ice business in any manner whatsoever * * * either on my own account, or as agent, or employee of any person, persons, corporation or corporations, by canvassing for and soliciting trade by selling or delivering ice," appellee testified that it is the purpose of the new concern to engage in the wholesale ice business and not in the retail business, but—

"By selling ice at wholesale I mean selling to peddlers. I will have to get these peddlers to buy from me; that will be part of my business. We will sell to anybody that will come and buy. When I sell what is called 'platform ice,' suppose the plant happens to be in your neighborhood and you drive up with a Ford automobile and say, 'I want 50 pounds of ice,' I would throw it on and sell it to you; that is inherent to the operation of an ice plant, but I didn't have anything to do with that end of it with the plaintiff company. I think I have lots of friends amongst the peddlers in this town. I started with one wagon and an old crippled mule, and I expect to try to get somebody to buy ice, and would not refuse these peddlers. * * * I don't mean that I intended just to sit and wait for business to come. I intended to go and get it if possible. I am going to sell to all of the peddlers that I can sell to, whether I take them from the plaintiff or anybody else, if they are entitled to credit or otherwise satisfactory. If I hadn't done this, the plaintiff would not have loaned my salary, and if I get into this other business, I will try to sell ice. I expect to make a living and draw a good salary, and I can't hold a position if I don't sell ice. * * *"

[1] The effect of this testimony is that appellee proposes to actively engage in selling ice, not directly to the retail consumers, except as they call at the plant for it, but in wagonload bulk to the familiar ice peddlers with routes upon which they sell the residents to satisfy domestic demands. He proposes to canvass and solicit, not among the individual consumers, but among peddlers, and "to sell to all of the peddlers that I can sell to, whether I take them from (appellant) or anybody else." Naturally, he doesn't "intend just to sit and wait for business to come"; he intends, on the contrary, to "go and get it if possible." He "will try to sell ice." The trial court found, by necessary inference from affirmative findings, that appellee's only duty in the new concern is to be "manager of the plant in the manufacturing of ice." But this finding is contrary to the testimony of appellee himself, which was undisputed.

[2, 3] The court also found, expressly, that it was intended by the stipulations in the bill of sale and contemporaneous agreement to prohibit appellee from "resuming the ice delivery business on the routes which he had formerly conducted," but the finding has no support in the record. The stipulation was plain and unambiguous. No attempt was made by pleading or evidence to modify or reform it, and the court was without authority to do so. The stipulation prohibited appellee from engaging in the ice business "by canvassing for and soliciting trade by selling or delivering ice" anywhere in the city of Dallas. This prohibition was unconditional; it prohibited appellee from selling or delivering ice to any trade, in any quantity, by any method. The court also concluded "that there was no testimony introduced regarding (appellee's) solvency or insolvency, and the court finds that he was and is solvent."

This finding, however, is discredited and nullified by its own terms, and of course will be disregarded.

[4] That the character of contract here sued on is valid and binding upon the parties thereto is now well settled in this state. Gates v. Hooper, 90 Tex. 563, 39 S. W. 1079; Ice Co. v. Evans (Tex. Civ. App.) 275 S. W. 87; Bettinger v. Ice Co. (Tex. Civ. App.) 278 S. W. 466. The only questions here, then, are those of whether appellee is about to engage in an undertaking prohibited by his contract with appellant, and, if so, will an injunction lie to restrain him from the threatened undertaking.

[5] We conclude from his own testimony that by his own efforts and business ability appellee created and built up a substantial retail ice business in Dallas, conducted by sales from his delivery wagons to individual consumers. Evidently appellant was attracted by his ability, for it purchased his business and equipment, together with the good will of his business, and employed him in its own plant, starting him at a salary of $125 a month. He must have carried his good business qualities into this employment, for his salary was steadily raised until it was doubled. In his own business, and in his employment with appellant, he became acquainted with the ice selling business, with routes, with ice peddlers, with customers. This knowledge of the business and acquaintance with the trade was acquired through a period of years, just how much longer than six years is not shown. So, by leaving appellant's employment and going directly into a competing business, appellee had all the advantages of acquaintance with the business and trade, and with the good will gained by him through many years' contact with the trade; he was in a position, if so disposed, to make serious inroads into appellant's business. It was against the use of these advantages over appellant that he had contracted with the latter; against the use of his knowledge of appellant's business and acquaintance with appellant's customers in soliciting and canvassing for customers, and in selling and delivering ice to the trade. We think the evidence of appellee himself— no other witness testified—clearly shows a purpose to canvass and solicit the trade for his ice business and to sell and deliver the product to that trade, including appellant's customers and his former customers, whom he had come to know in the business he had sold to appellant as well as those he had come to know by virtue of his employment by appellant. This purpose is in contravention of both the letter and spirit of his agreement. This being the case, the injunction should have been granted.

The judgment is reversed, and judgment will be here rendered accordingly.