## OAK CLIFF ICE DELIVERY CO. v. PETERSON. (No. 10087.)

Court of Civil Appeals of Texas. Dallas. June 4, 1927.

On Appellant's Motion for Rehearing July 16, 1927.

On Appellee's Motion for Rehearing Oct. 22, 1927.

**I. Assignments ⬤⇒19—Contract of employment authorizing employee's discharge, with clause forbidding engaging in same business within three years after discharge, held not assignable.**

Contract of employment giving employer right to discharge employee for cause specified therein, with further provision forbidding employee to engage in business within territory covered by him within three years after discharge, *held* personal and not subject to assignment.

**2. Assignments ⬤⇒68, 69—Employee's conduct in continuing employment after transfer of business was not estoppel as to or ratification of attempted assignment of employment contract.**

Where employee, under contract authorizing employer to discharge him for cause with further provision forbidding him engaging in same business for three years after discharge, continued work after transfer of business to another, his conduct did not constitute estoppel as to or ratification of attempted assignment of contract involved.

On Appellant's Motion for Rehearing.

**3. Appeal and error ⬤⇒742(1)—Proposition on which appeal was not predicated cannot be considered unless presenting fundamental error.**

Where propositions on which appeal was predicated do not embrace proposition relied on for reversal, such proposition cannot be considered unless appeal presents fundamental error.

**4. Pleading ⬤⇒228—Effect of sustaining special exceptions held same as sustaining general demurrer.**

Effect of sustaining special exceptions at time allegations of original and supplemental petition were before court *held* the same as if a general demurrer had been sustained.

**5. Contracts ⬤⇒116(2)—Validity of covenant forbidding employee engaging in same business depends on necessity for preservation of employer's business and good will.**

Validity of covenant forbidding employee from engaging in same business as employer after termination of employment for period of years depends on its terms being necessary for preservation of business and good will of employer, and, in case it imposes greater restraint than necessary to secure protection, is unenforceable to that extent, being contrary to public policy.

**6. Pleading ⬤⇒228—Allegation that limitation and restrictions relative to employee not engaging in same business as employer's were reasonable and necessary was not subject to general exception.**

Allegation that limitation and restrictions in agreement in employment contract relative to employee not engaging in same business for period of years were reasonable and necessary, while perhaps subject to special exception for failure to allege facts constituting necessity for and reasonableness of limitations, *held* not subject to general exception.

On Appellee's Motion for Rehearing.

**7. Pleading ⬤⇒402—Facts in supplemental petition cannot be considered in aid of allegations in original or amended petition.**

Facts alleged in supplemental petition cannot be considered or taken into account in aid of allegations contained in original pleading or amendment thereto.

**8. Assignments ⬤⇒131—Allegation that employee continued in plaintiff's employ after assignment of employment contract forbidding him engaging in same business stated cause of action for injunction.**

In suit to enjoin defendant from delivering ice and attempting to establish ice route in violation of contract of employment, allegation that defendant had been in plaintiff's employ by virtue of such contract for several years since assignment of contract under its terms and provisions *held* sufficient, as against special exceptions in effect constituting a general demurrer, notwithstanding contract was not assignable, in that allegation established a ratification by continuing in employment.

Appeal from District Court, Dallas County; E. E. Hurt, Special Judge.

Suit by the Oak Cliff Ice Delivery Company against F. C. Peterson. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Niblo & Dodd, of Dallas, for appellant.

W. B. Harrell, of Dallas, for appellee.

VAUGHAN, J. Oak Cliff Ice Delivery Company, a private corporation, appellant, instituted this suit against F. C. Peterson, appellee, on March 25, 1927, to enjoin appellee from delivering ice and attempting to establish an ice route in violation of his written contract in that portion of the city of Dallas, Tex., west of the Trinity river known as Oak Cliff. A temporary order was granted the date the petition was filed, restraining appellee from violating his contract in the respects alleged. The order required the ap-

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes.

pellee to appear and show cause why the restraining order should not be made permanent. On April 16, 1927, a hearing was had under said notice, at which appellee presented his motion to dissolve the restraining order and exceptions to appellant's petition on the ground that the contract declared on was not assignable in that appellant's petition showed that the contract was entered into between one J. B. Williams as employer and appellee as driver, and appellant sought to avail itself of the benefits of the contract as the assignee of the said J. B. Williams; the ground of the exception so presented being that the contract was a personal contract with J. B. Williams and not with appellant, and the same was not assignable. Appellee's special exceptions Nos. 1 and 9, each being in effect a general demurrer, were sustained, the restraining order theretofore issued dissolved, and the injunction prayed for denied. It is only necessary, for a proper disposition of this appeal, to have recourse to the following provisions of the contract furnishing the basis for this suit:

"Agreement, entered into this the 21st day of December, A. D. 1923, between J. B. Williams or his assigns hereinafter designated 'Employer' and F. C. Peterson hereinafter designated 'Driver.'

"The employer employs the driver for the purpose of driving an ice wagon to serve customers assigned to him; to canvass for new customers; to instruct other drivers and employees as foreman when detailed so to do; and to perform such other duties as may from time to time be delegated to him by the employer; and the employer agrees to pay the driver a salary not less than fourteen ($14.00) dollars per week.

"Said driver binds himself to at all times, observe all rules and regulations of said employer, and to give his entire time and best attention to its business.

"It is agreed that each party hereto may terminate this agreement upon fifteen days' notice, written only acceptable, but said employer may discharge said driver at any time for

"(a) Violation of its rules, or

"(b) Insubordination, or

"(c) Incivility to patrons, or

"(d) Failing to account for and pay over moneys as collected for the account of the employer, or

"(e) Inattention to its business, or

"(f) Unsatisfactory results from his route (employer to be the judge of that), or

"(g) Improper care and handling of his outfit.

"This agreement shall be in force as often as the driver shall be in the employ of the employer, whether his employment be continuous or not.

"In consideration of the premises the driver agrees not to engage in ice business, within the territory covered by the route or routes of which he may have had charge while in the employ of the employer, or within five squares, or blocks therefrom, for a term of three (3) years immediately after his employment shall, for any cause, cease, either on his own account or as agent or employee of any person, persons, corporation or corporations, by canvassing for and soliciting trade; by selling or delivering ice by establishing or endeavoring or pretending to establish an ice route; by selling, transferring or giving to anyone any right he may claim to have acquired in any ice route; nor by assisting anyone in doing any of the foregoing things or acts; nor in any manner whatsoever said driver agrees not to furnish anyone information as to said route or names of customers."

Appellant alleged the execution of the contract by one J. B. Williams, as employer, and appellee, as driver, the assignment of said contract to appellant by said Williams, the compliance by appellant with its terms, and the violation thereof by appellee in soliciting the customers of appellant served by appellee while in its employ; that he was, either for himself or some other person, persons, or corporation, canvassing for and soliciting trade in violation of said agreement and selling and delivering ice for himself or as the agent or employee of some other person in the territory prohibited to him by the terms of said contract. Replying by way of supplemental petition to appellee's answer, alleging that said contract was not assignable on account of being a personal contract with J. B. Williams and not with appellant, appellant alleged that said Williams, at the time of the execution of the contract, was engaged in the business of delivering ice in Oak Cliff, but that one J. O. Jones and one Joe C. Thompson owned all his physical equipment and furnished the finances for said business, and that appellee knew this fact; that shortly after the execution of said contract said Williams left and surrendered the business, including the contract, to J. O. Jones and Joe C. Thompson, who formed the appellant corporation about March, 1924, and that appellee, with knowledge of such circumstances, continued in the employ of these successors in the business until he ceased to work in March, 1927. The only question involved on this appeal is whether or not the contract sued upon was assignable.

[1] Appellant contends that from a consideration of the entire contract it appears that only a certain result was contracted for, between appellee and said Williams, viz., to hold ice customers served by appellee for his business and not for the personal labor or services of appellee. In other words, that in so far as appellee was required by the terms of the contract to perform personal service, same was but incident to the result sought to be accomplished, viz., to hold the customers for his business served by appellee; that being the paramount purpose for which the contract was executed. Appellant cites the following authorities in support of the foregoing proposition: Langever v. United Advertising Corporation (Tex. Civ. App.) 258 S. W. 856; Dannel v. Sherman

Transfer Co. (Tex. Civ. App.) 211 S. W. 297; Jennings v. Shepherd Laundries Co. (Tex. Civ. App.) 276 S. W. 726; Dittman v. Model Baking Co. (Tex. Com. App.) 271 S. W. 75; Malakoff Gin Co. v. Riddlesperger, 108 Tex. 273, 192 S. W. 530; Lakeview Land Co. v. San Antonio Traction Co., 95 Tex. 252, 66 S. W. 766; M. K. & T. v. Carter, 95 Tex. 461, 68 S. W. 159; McKneely v. Armstrong, 109 Tex. 363, 210 S. W. 192; Coleman v. Anderson, 98 Tex. 577, 86 S. W. 730; Sickles v. Lauman, 185 Iowa, 37, 169 N. W. 670, 4 A. L. R. 1073. Each of these authorities is distinguished from the instant case by the lack of that vital feature of personal trust and confidence that apparently existed between and actuated the parties in the making of the contract under consideration, viz., appellee was willing to vest in said Williams the power and authority to discharge him at any time, and in this respect clothed him with autocratic power for (a) violation of his rules, or (b) insubordination, or (c) incivility to patrons, or (d) failure to account for and pay over moneys as collected for the account of the employer, or (e) inattention to his business, or (f) unsatisfactory results from his route, or (g) improper care and handling of his outfit; and conferred upon him the authority to terminate said agreement upon 15 days' notice in writing, this being, it is true, a reciprocal right. By the literal terms of the contract, appellee was employed for the purpose of serving said Williams as follows: To drive an ice wagon, to serve customers assigned to him, to canvass for new customers, to instruct other drivers and employees as foreman when detailed so to do, and to perform such other duties from time to time as should be delegated to him by said Williams. The agreement on the part of appellee not to engage in the ice business within the territory covered by the route or routes of which he may have had charge while in the employ of said Williams, or within five squares or blocks therefrom, for a term of three years immediately after his employment should from any cause cease, embodied an agreement of inactivity on his part in the territory designated and for the time stated in so far as engaging in the ice business, while the dominant feature of the contract is one of employment requiring the actual performance of personal service, as above specifically designated, and the performance of other duties left with the said Williams to be directed to be performed in connection with the conduct of his ice business. That this contract involved unlimited personal confidence is self-evident. The plenary authority conferred by appellee upon said Williams to discharge him manifested the intention of the parties that their contract should not be assignable, in that in making the contract appellee selected Williams as the one to whom he was willing to commit such

power, to terminate the contract in so far as appellee was concerned, and to direct his services thereunder. This is in keeping with the doctrine announced in Arkansas Valley Smelting Co. v. Belden Mining Co., 127 U. S. 379, 8 S. Ct. 1308, 32 L. Ed. 246, as follows:

"But everyone has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent. In the familiar phrase of Lord Denman, 'You have the right to the benefit you anticipate from the character, credit and substance of the party with whom you contract.' * * * The rule upon this subject, as applicable to the case at bar, is well expressed in a recent English treatise. 'Rights arising out of contracts cannot be transferred if they are coupled with liabilities, or if they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided.' Pollock on Contracts, 4th Ed. 425. * * * In short, the plaintiff undertakes to step into the shoes of Billing, and to substitute its liability for his. The defendant had a perfect right to decline to assent to this, and to refuse to recognize a party, with whom it had never contracted."

To the same effect is the holding in the following cases: Hudson v. Farris, 30 Tex. 574; Menger v. Ward, 87 Tex. 622, 30 S. W. 853; Thomas-Bonner Co. v. Hooven et al. (C. C. A.) 284 F. 386; Schlessinger v. Forest Products Co., 78 N. J. Law, 637, 76 A. 1024, 30 L. R. A. (N. S.) 347, 138 Am. St. Rep. 627; American S. & R. Co. v. Bunker Hill & S. M. & C. Co. (D. C.) 248 F. 172; Globe & Rutgers Fire Ins. Co. v. Jones, 129 Mich. 664, 89 N. W. 580; Randall v. Chubb, 46 Mich. 311, 9 N. W. 429, 41 Am. Rep. 165.

We conclude that the contract was not only personal in so far as the character of services to be performed and the condition under which same were to be performed, but in addition thereto that in making the contract, conferring upon Williams the right to exercise the discharging power in a practically unlimited way, was the imposing of confidence and trust in him which would indicate the deliberate selection of Williams for that purpose by appellee, and the relationship thus created was one that was not intended by the parties to be assignable. To hold otherwise would be to destroy the right of one to select for himself the party to whom in contracting on account of his knowledge of and confidence in, he is willing to commit, without the usual safeguards, the exercise of certain rights and privileges vital to the subject-matter of the contract, and which might be used by a designing or unreliable person to his disadvantage or injury.

[2] It is clear from the terms of the contract that appellee placed himself almost without reservation in the power of Williams to terminate the contract which would end his employment and for three years deprive

him of his right to resume the ice business in the territory prohibited to him by the terms of the contract. Certainly it was not within the contemplation of the parties that the relationship thus brought about should be by assignment conferred upon and exercised by a stranger to appellee without his consent thereto. Appellant attaches considerable importance to the use of the word "assigns" in connection with the name of J. B. Williams, as follows: "Between J. B. Williams and his assigns hereinafter designated employer," and contends that the use of that word indicated that it was the intention of the parties that the contract should be assignable, that is, pass to the assigns of J. B. Williams. As used, this word does not describe the parties who might enforce the contract, or control the body of the contract in the matter of assignment. The word as used is not significant of the intention of the parties, or as to the construction of the contract—not even descriptive of the person who might take an interest in or incur a liability under the contract. Therefore, the contract was not made assignable by the use of the term "assigns," as same involved a relation of personal confidence which repelled the idea that it was intended by the parties that any person other than the one named in the contract on whom the right to exercise such provisions was conferred should exercise same. Swarts v. Narragansett Elec. Light Co., 26 R. I. 436, 59 A. 111; Adair v. Smith, 23 Ga. App. 290, 98 S. E. 227; Central Brass & Stamping Co. v. Stuber (C. C. A.) 220 F. 909.

Appellant, in support of his contention that the court erred in sustaining the exceptions, relies upon the above-mentioned allegations contained in its supplemental petition, presenting in effect estoppel and ratification on the part of appellee as to and of the assignment of said contract as pleaded by appellant. Admitting all of the allegations so relied upon, viz., the transfer of the business by J. B. Williams to Joe C. Thompson and J. O. Jones, the organization of the appellant corporation by Thompson and Jones, that appellee thereafter was employed by and worked for appellant, and that appellee knew of the transition of the business from the proprietorship of J. B. Williams to that of appellant and all the circumstances attending such change as pleaded by appellant, same did not constitute an estoppel as to or ratification of the attempted assignment of the contract involved, no act being alleged on the part of appellee by which appellant was induced to accept the transfer and assignment of the contract or that showed such acquiescence in the rights asserted by appellant under the assignment as claimed by him as would preclude appellee from urging as a defense to the relief sought by appellant that said contract was not assignable. Find-

ing no error in the judgment of the trial court, same is affirmed.

Affirmed.

### On Appellant's Motion for Rehearing.

[3] This appeal was determined adversely to appellant on the ground upon which it elected to prosecute same, as clearly stated in its brief, to wit, "The appeal therefore involves only the single question as to whether the contract is assignable or nonassignable," and as thus gauged the court confined its investigation to the assignability of the contract for the alleged violation of which the equitable relief was sought by appellant, which resulted in the judgment of the lower court being affirmed. Appellant by its motion now contends that the trial court erred in sustaining appellee's exceptions to its petition, and on that ground denying it the equitable relief sought, and that this court erred in affirming the judgment of the trial court, because appellant in its pleading alleged "that shortly after plaintiff corporation was formed plaintiff, acting through one of its agents, W. W. Walker, called for the defendant to execute a new contract to eliminate any possible question that might arise, * * * whereupon the defendant informed said agent that he had one contract held by the plaintiff and that the same was sufficient to bind him in his employment for plaintiff, and that he ratified and confirmed said contract as belonging to the plaintiff and as the contract he was working under for the plaintiff, * * * and that plaintiff shows that such limitation and restrictions and agreements placed in the said contract were reasonable and necessary, * * * and the defendant, either for himself or some other person, is attempting to divert the trade within said route and within five blocks thereof from plaintiff to himself or to some other person for whom he is now working," which, with the other allegations of its petition reflected in the original opinion, was sufficient to constitute grounds for the relief sought. No one of appellant's three propositions on which its appeal was predicated embraces the above proposition. Therefore, unless same presents fundamental error, it cannot be considered.

[4] In sustaining special exceptions Nos. 1 and 9, presenting in effect the same ground of exception, viz., that even if appellant was the owner and holder of the contract involved by purchase said contract was a personal one with J. B. Williams, the other contracting party, and not with appellant, and was not assignable, the allegations of appellant's original and supplemental petition were before the court, and the effect was the same as if a general demurrer had been sustained; appellant's right to maintain its cause of action being thereby determined solely upon the question of the assignability of the contract. In so far as this question

was decided upon the language of the contract, the court was not in error, but a different proposition is presented by the pleadings alleging the adoption of the contract after its alleged assignment as a contract between appellant and appellee, as employer and employee, that the limitation, restrictions, and agreements placed in said contract were reasonable and necessary, and that appellee, either for himself or for some other person, was attempting to divert the ice trade built up by appellant within the territory described in said contract, to himself or to some other person for whom he was working, and in violation of the terms of said contract. These allegations were sufficient to show that, although the contract was not within its terms assignable, an attempt had been made to assign it to appellant by an original party to the contract; that appellant asserted the right to the benefit and protection of the terms and provisions of said contract on the ground that same had been adopted by appellant and appellee as the contract under which appellee entered and remained in appellant's service until he voluntarily left same; that the limitations, restrictions, and agreements contained in said contract on which appellee based his claim that same was not assignable, were reasonable and necessary; and that appellee was attempted to divert the ice trade within the route theretofore assigned to him and within five blocks thereof from appellant to himself or to some other person, in violation of the terms of said contract. Therefore, it is apparent that the court erred in sustaining special exceptions Nos. 1 and 9 and dissolving the restraining order theretofore granted, as appellant was entitled to a hearing on the merits of the issues of fact presented by its pleadings. The allegations that "such limitations and restrictions and agreements placed in said contract were reasonable and necessary" applies with equal force with reference to the restriction and limitations being reasonable and necessary within the designated territory, as well as within five blocks or squares of the ice route detailed to him by appellant under the terms of said contract. In other words, whether it is alleged that appellee violated the restrictions and limitations contained in said contract as to the ice route detailed to him and which he worked under his employment with appellant, or violated same within five blocks or squares of said route, the burden would rest on appellant in either case to establish that the limitation and restrictions placed upon appellee's right to conduct the ice business in his own right, or in the service of any other person, firm, or corporation, in the prohibited district, was reasonable and necessary to secure to appellant the enjoyment of the good will of its business and protection in its ice trade during the period of time appellee was prohibited from so engaging in

said business. City Ice Delivery Co. v. Evans (Tex. Civ. App.) 275 S. W. 87; Bettinger v. N. Ft. Worth Ice Co. (Tex. Civ. App.) 278 S. W. 466; Tex. I. & C. S. Co. v. McGoldrick (Tex. Civ. App.) 284 S. W. 615.

[5] The validity of the covenant in question, both as to the assigned and adjoining territory, depends upon its terms being necessary for the preservation of both the business and good will of the appellant after the termination of the employment, and if such covenant imposed a greater restraint on the appellee than was necessary to secure such protection, to that extent same is unenforceable as being contrary to public policy. The necessity for the covenant, as well as its reasonableness, must rest upon the services rendered by appellee to appellant under his employment, in the conduct of its business, and be confined to the territory in which appellee operated in the performance of his duties as such employee. In the enforcement of such covenants, courts will diligently and with a jealous care inquire into the necessity for and the reasonableness of same to the end that those who through necessity must labor to earn a livelihood will not be placed at the mercy of those who do not so have to toil, for otherwise a condition of industrial servitude might be developed. The right to labor is inherent, being enjoined by the very existence of the human family, and the freedom of the laborer to put forth his best efforts to justly enlarge his sphere of operation, usefulness, and income, should never be interfered with or restricted save and except by that which is within and for the public good, or within a sound public policy. Therefore, full and satisfactory proof should be required of the litigant having the burden of proof to establish the necessity for, and the reasonableness of, covenants restricting such inherent right to labor.

[6] The allegation that "such limitation and restrictions and agreements placed in said contract were reasonable and necessary" applied to the assigned territory, while perhaps subject to a special exception because the facts constituting the necessity for and the reasonableness of the limitations, and restrictions, were not alleged, yet same was not subject to any one of the special exceptions presented, and certainly not to a general exception.

Because of the fundamental error committed as here pointed out, appellant's motion for rehearing is granted, and the judgment heretofore entered affirming the judgment of the lower court is set aside, and this cause is reversed and remanded for further proceedings not inconsistent with the opinion of this court.

### On Appellee's Motion for Rehearing.

[7] The disposition made of this appeal under appellant's motion for rehearing, predicated on the judgment of the trial court sus-

taining appellee's special exceptions Nos. 1 and 9 to appellant's original petition, is challenged by appellee's motion on the ground that appellant did not plead the facts presenting the issue of ratification of the original contract made by appellee with one J. B. Williams as the contract of employment between appellant and appellee so as to make same a part of the cause of action pleaded by it; the allegations in reference thereto being only contained in appellant's first supplemental petition. From a careful examination of the pleadings, it is manifest that appellee's contention in this respect is correct. Therefore, we were in error in basing our holding on the facts of ratification as pleaded by appellant in its first supplemental petition. Facts alleged in a supplemental petition cannot be considered or taken into account in aid of the allegations contained in an original petition or an amendment thereto, the office of a supplemental petition being to present exceptions to defendant's answer, and to reply to new matters alleged therein, and not to supply any defects in or make additions to the original petition; that being the office of an amendment. Glenn v. Dallas County Board of Levee Improvement District, 114 Tex. 325, 268 S. W. 452; Mann et al. v. Trinity Farm Co. et al. (Tex. Civ. App.) 270 S. W. 923; Burger v. Ray (Tex. Civ. App.) 239 S. W. 257; Jones v. Davis Motor Co. (Tex. Civ. App.) 224 S. W. 701; Creosoted Wood Block Paving Co. v. Mackay (Tex. Civ. App.) 234 S. W. 587; Crescent Ins. Co. v. W. R. Camp et al., 64 Tex. 521; Lynch v. Ortlieb et al. (Tex. Civ. App.) 28 S. W. 1017; Blewitt v. Greene, 57 Tex. Civ. App. 588, 122 S. W. 915; Burks v. Burks (Tex. Civ. App.) 141 S. W. 337; May v. Anthony (Tex. Civ. App.) 141 S. W. 337; May v. Anthony (Tex. Civ. App.) 151 S. W. 602; Kiehn v. Willmann (Tex. Civ. App.) 218 S. W. 15; Sanger Bros. v. Barrett (Tex. Civ. App.) 221 S. W. 1087.

[8] This error we acknowledge, but at the same time feel constrained to say that it was at least in a measure due to the way in which the case was presented to this court, and there being no occasion prior to the filing of appellee's motion to make a critical examination of appellant's pleading to ascertain the allegations by which appellant's cause of action could alone be sustained. However, in the careful examination given the pleadings, we found the following allegations, which had altogether theretofore been overlooked, contained in appellant's original petition, namely:

"Plaintiff further shows that the defendant, by virtue of said contract, has been in plaintiff's employ since March, 1924, the defendant working for plaintiff under the terms and provisions of said contract, and plaintiff paying the defendant regularly wages and salaries of not less than $14 per week until on or about March 22, 1927, when the defendant ceased to work for plaintiff without giving plaintiff the 15 days' written notice, as provided in said agreement, and without plaintiff violating in any way the terms of said agreement."

These allegations undoubtedly rendered the petition impervious to said special exceptions as well as to a general demurrer, for the effect of its language was to allege that appellee remained in appellant's employ from March, 1924, to March 22, 1927, by virtue of said contract, worked for appellant during said time under the terms and provisions of said contract, and appellant paid appellee his wages and salaries according to the terms thereof. Certainly this could not be true unless said original contract had in some way become the contract between appellant and appellee so that the terms thereof became equally binding upon them as the same were upon the original parties thereto. By this holding we do not wish to be understood as saying that this allegation would not be subject to special exceptions requiring more definite and accurate allegations in reference to the facts constituting the ratification and perhaps even as to the adoption by appellant and appellee of said contract.

Appellant's petition, by reason of the above allegations, not being subject to the special exceptions Nos. 1 and 9, sustained by the trial court, appellee's motion for rehearing is overruled.