## MALAKOFF GIN COMPANY V. C. A. RIDDLESPERGER ET AL.

No. 2486. Decided February 28, 1917.

**Injunction—Contract—Restraint of Trade.**

A partnership purchased a gin and mill, the vendors agreeing that while the purchasers continued to operate such gin and mill in the community they, the sellers, would not engage in similar business there. The purchasing partnership incorporated, taking in a new man as stockholder and one of the firm retiring. They then moved the gin and most but not all of the machinery connected with its operation to another county, replacing it with other gin and machinery. The vendors thereafter put up a new gin and mill and operated it. The corporation sued them for damages for violation of their contract, seeking injunction also against continuance of the business. They had verdict and judgment for nominal damages only, but injunction was refused. Held:

1. That since the verdict, though only for nominal damages, established that defendants had broken their contract, plaintiffs were entitled to the injunction sought against its continued violation. (P. 278.)

2. The agreement not to engage in a similar business while the purchasers "operate such gin and mill" referred to the operation of such business in that community, and was not limited to its operation with the very machinery purchased. (Pp. 278, 279.)

3. The rights of the purchasers under such contract could be sold and assigned, and they passed from the partnership to the corporation by assignment of the property and contract. (P. 279.)

4. The contract not to engage in the business was not invalid restraint of trade at common law; nor was it violative of the anti-trust statutes of the State. (P. 279.)

5. The right to the injunction was not lost by plaintiff's failure for more than three years to seek such equitable relief. (P. 279.)

Vol. 108-18.

Question certified from the Court of Civil Appeals for the Fifth District, in an appeal from Henderson County.

*Richardson, Watkins & Richardson,* for appellant.—The right of enforcing a contract is guaranteed under the Constitution as unreservedly as the right to make one. And while a part of the consideration between the contracting parties was the transfer of a gin and mill plant, the right of the parties under the law, was' and is the same as if the appellees had been paid two thousand dollars, to desist from business only, and after receiving the same had set up a continued opposition without returning the money. Simkins, Equity (2d ed.), p. 746; Patterson v. Crabb, 51 S. W., 870; Am. & Eng. Ency., vol. 24, p. 869 (2d ed.); Anderson v. Rowland, 18 Texas Civ. App., 460, 44 S. W., 911; Rev. Stats., art. 2873; Gates v. Hooper, 39 S. W., 1079; Sumner v. Crawford, 91 Texas, 129, 41 S. W., 994.

Where a party has accepted pay and covenanted not to do a specific act, it is not necessary that the complaining party shall show that any damages have been done to him, in order to obtain an injunction, and the court will protect the complainant in the right which he has purchased. Anderson v. Rowland, 18 Texas Civ. App., 460, 44 S. W., 911; 2 High, Injunctions, sec. 1158; Simkins, Equity (2d ed.), p. 746; on multiplicity of suits see Simkins, Equity, 746; Railway Co. v. Miller, 93 S. W., 177; Hockaday v. Wortham, 22 Texas Civ. App., 419, 54 S. W., 1094.

The plaintiff's recovery of damage in any sum on account of the breach of contract, is not a reason for refusing him an injunction protecting him in the future. Welsh v. Morris, 81 Texas, 162; Rev. Stats., art. 2873.

Good will, or an agreement to desist from business, especially when connected with an established business is now considered property, with a right of reconveyance, and it is the special province of a court of equity to enforce such an agreement. Erwin v. Hayden, 43 S. W., 610; Parsons on Contract (5th ed.), p. 368.

*E. P. Miller* and *Faulk & Faulk,* for appellees.—The writ was properly refused because: First, plaintiff had elected to bring suit for damages, prosecuted the suit to final judgment, which, reversed on appeal, had been pending more than three years before injunction was asked for; during said time defendant's plant was improved, is now permanent of the value of $5000; and on account of gross laches, acquiescence and election to bring suit for damages, thereby ignoring the contract, it has forfeited its right, if it ever had any, for a writ of injunction. Second, before an injunction should issue, the right under the contract must be free from doubt, clear and certain, and its violation well established. Injunctive relief will be denied if, to grant it, great hardship and expense will be entailed on defendant, with but little corresponding benefit to plaintiff. High on Injunctions (1874),

secs. 730-31-32; 10 Am. & Eng. Ency. of Law (1889 ed.), pp. ·802, 938, 940; 40 L. R. A., 633-635; Simon v. Nance, 142 S. W., 362; Enc. Dig. Texas R., vol. 6, pp. 795-96, and authorities cited; 26 S. W., 260; 50 S. W., 222-4; 88 Texas, 177; 13 Texas, 120; 2 U. C., 743; 67 Texas, 5.

The clause in the contract not to go into the gin or mill business by the Riddlespergers was personal to H. L. Flagg, J. W. Bartlett and T. A. Bartlett composing a partnership under the firm name and style of the Malakoff Gin Company. Bagby & Rivers Co. v. Rivers, 40 L. R. A., 632, 87 Md., 400; Guerand v. Dandelet, 3 Am. Rep., 164.

MR. JUSTICE YANTIS delivered the opinion of the court.

The questions of law involved herein arise upon certified questions presented by the Fifth Court of Civil Appeals. The very clear statement of the Court of Civil Appeals, and the questions propounded, are as follows, towit:

"On July 9, 1907, the appellant was a co-partnership composed of H. L. Flagg, J. W. Bartlett and T. A. Bartlett, and on said date the appellees, C. A. Riddlesperger and J. S. Riddlesperger, sold and delivered to said co-partnership their gin house, cotton gin and grist mill, situated in or near the town of Malakoff, Henderson County, Texas, together with the machinery used in the operation of said gin and mill, with the right to maintain and operate the same on appellees' land for the period of one year. The sale and purchase of the property mentioned is evidenced by the following instrument in writing:

" 'The State of Texas,
County of Henderson.

" 'Know all men by these presents, we, C. A. Riddlesperger and S. J. Riddlesperger, of the aforesaid State and county, for and in consideration of the sum of four thousand dollars cash in hand paid the receipt of which is hereby acknowledged, have bargained, sold and delivered and by these presents do bargain, sell and deliver to the Malakoff Gin Company, a co-partnership composed of H. L. Flagg, J. W. Bartlett, T. A. Bartlett and (all) of said State and county our gin house and machinery consisting of a complete gin and mill outfit, together with the building in which same is situated and all appurtenances thereto now situated on our land in Malakoff, Texas, and we hereby grant unto said Malakoff Gin Company the right to operate said gin and mill on our land for the period of twelve months from this date at which time said gin company agrees to remove said plant from our said land and it is further agreed that they may remove any other machinery or improvements placed thereon by them prior to that time.

" 'To have and to hold unto said Malakoff Gin Company, its heirs, successors and assigns forever, and as a further inducement to said gin company we and each of us do hereby covenant and agree with said gin company that during the time that they operate said gin or mill in the community in which Malakoff is situated that we will not directly

or indirectly engage in or be interested in any other gin or mill in said community.

"'Witness our hands at Malakoff, Texas, this the 9th of July, 1907.

(Signed)         "'C. A. Riddlesperger,

"'S. J. Riddlesperger.'

"In March, 1908, the co-partnership, Malakoff Gin Company, by that name, was duly incorporated under the laws of Texas for fifty years with capital stock of $7500, H. L. Flagg and T. A. Bartlett, who were members of the co-partnership firm of Malakoff Gin Company, and J. L. Gilmore, who had not been a member of the said firm, becoming the sole stockholders thereof.  On the 15th day of March, 1908, by written transfer duly executed, the Malakoff Gin Company, corporation, became the owner of the entire property bought by the Malakoff Gin Company on the 9th day of July, 1907, from appellees, 'together with all the rights, warranties, agreements and covenants given' by them to Malakoff Gin Company, as a co-partnership.  The corporation became, by the said written transfer of date March 15, 1908, the owner also of what was known as the Johnson gin and mill.  The Malakoff Gin Company as a co-partnership was engaged in the gin and mill business and the purposes for which it was incorporated are:

"'The construction or purchase and maintenance of gins, wharves and warehouses for the storage of cotton or cotton seed and the purchase and sale of cotton, cotton seed or cotton seed products.'

"The Riddlesperger gin, mill and machinery was operated about one year on the Riddlesperger land and then moved off by appellant.  The gin house and grist mill were moved near the railroad in the town of Malakoff, and the cotton gin and practically all of the machinery, including the boiler and engine, used in running it, were moved to Ellis County, Texas, and was put up and run there by appellant.  Some of the attachments, however, to the gin which was moved to Ellis County, such as belting, piping and pulleys, were kept at Malakoff, and the Johnson gin and machinery were installed there in the house bought from the Riddlespergers, and this gin, as well as the Riddlesperger grist mill, was operated at Malakoff by appellant as the gin and mill had been theretofore.  About two months after appellant had moved the Riddlesperger gin and machinery to Ellis County, appellees put up a gin on the old site of the gin and mill which they had sold to the Malakoff Gin Company, when it was a co-partnership, and began to gin cotton and have since that time continued to operate said gin for that purpose.  Upon the theory and contention that the appellees had breached their contract not to engage in or be interested in any gin or mill in the Malakoff community during the time that the appellant should operate the gin or mill bought from the appellees, appellant, on the 8th day of January, 1909, brought suit for damages in the sum of $3500, but did not pray for an injunction.  After the institution of the suit, and on March 2 and September 8, 1909, respectively, appellant filed amended petitions, praying for damages in the sum of $3500,

but did not ask for an injunction restraining appellees from running their gin. In this attitude of the case it was tried, the trial, under the court's construction of the contract, resulting in an instructed verdict for the appellees. From the judgment entered upon such verdict appellant appealed and this court reversed said judgment and remanded the case for a new trial. 133 S. W., 519. After the case was remanded, and on February 6, 1912, appellant amended its petition, alleging its damages then to be $6000, and for the first time prayed for an injunction enjoining appellees from operating their gin in the Malakoff community. When the suit was first filed the appellees' gin plant was worth $2250, and when the injunction was prayed for was, by reason of improvements and additions made by appellees, worth $5000. It is charged in appellant's petition that the Riddlespergers put up both a gin and mill, but there is no proof in the record that they put up a mill. About the time the Riddlespergers began putting in their gin Mr. T. A. Bartlett, one of the stockholders of the Malakoff Gin Company, discussed the matter with one of the Riddlespergers as to whether or not the Riddlespergers had the right to put up another gin, Bartlett contending and asserting that they had not such right under the terms of their contract, and Riddlesperger contending and asserting that they did.

"The case, upon the amended petition filed February 6, 1912, was tried during the February term, 1912, of the court, the court charging the jury upon the measure of damages as follows: 'If you find for the plaintiff, under the foregoing instructions, you will assess its damages at such sum as will be the actual damages sustained by the plaintiff as the direct consequence of the breach, if any, of the said agreement; and the measure of damages would be the loss of profits, if any, to the plaintiff's business at Malakoff up to February 6, 1912, which you may find from the evidence was the direct result of defendants engaging in said gin business in said community, and if plaintiff had suffered no such loss of profits, you will not find any actual damages against defendants. If you find defendants have violated their agreement but do not find that plaintiff has sustained a loss of profits, you will at any rate find for the plaintiff nominal damages, which is meant some trifling sum which is allowed for the breach of a contract where no serious loss is proven to have been sustained.'

"The trial resulted in a verdict in favor of appellant for the sum of $10, the verdict reading as follows: 'We, the jury, find for plaintiff in the sum of Ten Dollars for breach of contract. Joe Young, Foreman.'

"The undisputed evidence, if the appellant was entitled to recover any sum, would have warranted a verdict in appellant's favor for a very much larger amount than that awarded by the verdict rendered. After this verdict was returned into court appellant filed a motion, among other things, alleging that the jury by their verdict found that the Riddlespergers had breached their contract not to 'engage in or be interested in any other gin or mill' in the Malakoff community

during the time it should operate the gin or mill purchased from them and prayed that the court make and enter an order enjoining appellees from 'further engaging in or being interested in the running or operation of a gin or mill in said Malakoff community.' The making of such an order was resisted by appellees, upon the grounds, among others in substance: (1) that appellant, in filing its suit for damages only and in failing to ask for an injunction for the period of three years thereafter, during which time appellees had by improvements and the addition of other and new machinery, increased the value of their gin plant from $2250 to $5000, appellant was estopped from obtaining injunctive relief; (2) because the granting of the injunction under the circumstances shown would inflict a greater injury on appellees than the refusal of it would benefit the appellant and would be inequitable and contrary to the real justice of the case; (3) because the contract set up by appellant only obligated appellees not to put up another gin or mill in the Malakoff community, so long as the appellant operated the gin or mill purchased from appellees in that community, and when appellant moved the Riddlesperger gin and machinery to Ellis County appellees were no longer bound by said contract; (4) because the provision of the contract obligating appellees not to engage in the gin or mill business in the Malakoff community applied only to the Malakoff Gin Company as a co-partnership and not to their successor or assign, the Malakoff Gin Company, corporation; (5) that the proof failed to show a violation on their part of the contract entered into between them and the Malakoff Gin Company, as a co-partnership. Appellant's motion praying for injunction was by the court overruled and judgment entered upon the verdict of the jury simply that appellant recover of appellees the sum of $10, and all costs of suit. A formal judgment was also entered denying appellant the injunctive relief prayed for, and from this judgment alone appellant appealed, basing all of its assignments of error upon the action of the court in refusing the injunction.

"Regarding the issue of law arising upon the appeal of importance, and being in doubt as to how it should be decided, we deem it advisable to certify the question set out below to the honorable Supreme Court of Texas for adjudication.

"Question. Under the foregoing facts and verdict of the jury was the appellant entitled to the injunction prayed for and did the trial court err in refusing to grant it?"

We think that under the facts recited, and the verdict of the jury which was rendered, the appellant was entitled to the injunction prayed for, and that the trial court erred in refusing to grant it. While the verdict of the jury was for nominal damages only, it was sufficient to indicate that the appellees had breached the contract, and in fact the verdict expressly so stated.

The clause in the contract which provides that during the time the Malakoff Gin Company operates "said gin or mill in the community

in which Malakoff is situated," they, the Riddlespergers, would not, directly or indirectly, engage in or be interested in any other gin or mill in said community, clearly means that the Riddlespergers will not so engage while the Malakoff Gin Company is engaged in the business of operating a gin or mill in said community, and not, as contended by the appellees, that the Riddlespergers will so refrain only during the time the Malakoff Gin Company should operate the mill and gin with the same machinery which they purchased from the appellees. The removal of most all the machinery purchased by the appellant from the appellees to Ellis County, and the substitution by them of other machinery therefor, would not authorize appellees to re-engage in the gin business in said community, and to so engage while the Malakoff Gin Company still occupied the field was an undoubted breach of the contract.

The insistence of the appellees that the contract did not bind them to the observance of its provisions when the Malakoff Gin Company, a co-partnership, transferred the gin and mill purchased by them from appellees to its successors, the Malakoff Gin Company, corporation, is without any substantial merit. The members of the co-partnership, with the exception of one, each became stockholders in the corporation, and only one stockholder was added who was not a member of the co-partnership prior to the organization of the corporation. The co-partnership, when transferring the gin and mill to the corporation, also assigned to it the said contract, with all its rights existing under it by reason of its covenants, and agreements. We are of opinion that there is no good reason for holding that such a chose in action could not be sold and assigned in this way, and that no sound reason exists for holding that the appellees were thereby absolved from complying with the covenants and agreements which it contained. No additional burdens or hazards were thereby cast upon them, and their duties remained the same as they were before such assignment was made. It must be immaterial to them whether they are required by the corporation to keep the contract, or whether they are so required by the co-partnership.

We are of opinion, that as limited by the facts stated, the contract was not in restraint of trade at common law, or in violation of the Anti-trust Act of the State. Crump v. Ligon, 37 Texas Civ. App., 172, 84 S. W., 250; Comer v. Burton-Lingo Co., 24 Texas Civ. App., 221, 58 S. W., 970; Wolff v. Hirschfield, 23 Texas Civ. App., 670, 57 S. W., 572; Insurance Co. v. State, 86 Texas, 263, 22 L. R. A., 483, 24 S. W., 397; Welsh v. Morris, 81 Texas, 159, 26 Am. St., 801, 16 S. W., 744; Gates v. Hooper, 90 Texas, 564, 39 S. W., 1079.

The failure of appellant for more than three years after the contract was breached to ask for equitable relief by injunction would not constitute such laches as would bar the right to injunction. Watson v. Texas & P. Ry. Co., 73 S. W., 830; Heidenheimer v. Loring, 6 Texas Civ. App., 560, 26 S. W., 99; Cetti v. Dunman, 26 Texas Civ. App., 433. 64 S. W., 787; McLane v. Bank, 68 S. W., 63; San Antonio National Bank v. McLane, 96 Texas, 48, 70 S. W., 201.

We think the appellant is entitled to the relief by the injunction as prayed for, to prevent a future breach of the contract.