In article 1920 of the Civil Statutes of 1925, the following appears:

"Whenever a district judge deems it advisable to hold a special term of the district court in any county in his district, such special term may be held; and such judge may convene such term at any time which may be fixed by him. Such district judge may appoint jury commissioners, who may select and draw grand and petit jurors in accordance with the law. Such jurors may be summoned to appear before such district court at such time as may be designated by the judge thereof. In the discretion of the district judge, a grand jury need not be drawn or impaneled. No new civil cases can be brought to a special term of the district court."

It is true that these same provisions were formerly embraced in the C. C. P. 1911, arts. 93 and 94. However, the necessity therefor is not apparent, and the omission of them in the revision of 1925 is not believed to impair their efficacy in authorizing the organization of district courts, and, when so organized, the provisions of the Constitution operate upon their jurisdiction. See Ex parte Young, 49 Tex. Cr. R. 536, 95 S. W. 98; Ex parte Martinez, 66 Tex. Cr. R. 1, 145 S. W. 959; Mayhew v. State, 69 Tex. Cr. R. 187, 155 S. W. 191; Davis v. State, 83 Tex. Cr. R. 539, 204 S. W. 652; Elliott v. State, 58 Tex. Cr. R. 200, 125 S. W. 568; Hickox v. State, 95 Tex. Cr. R. 175, 253 S. W. 823; Newton v. State, 93 Tex. Cr. R. 314, 247 S. W. 281. As applied to the present record, the judge having called a special term of court, it was within the scope of the court's power to provide a jury. See Bennett v. State, 95 Tex. Cr. R. 422, 254 S. W. 949; Ex parte Holland, 91 Tex. Cr. R. 339, 238 S. W. 654.

The judgment is reversed, and the cause remanded.

On State's Motion for Rehearing.

HAWKINS, J. A motion for rehearing in behalf of the state is presented by the honorable district attorney of the Eighth judicial district, which is based largely upon what is conceived to be a conflict between our opinion in the present case and that in Gentry v. State, 105 Tex. Cr. R. 617, 290 S. W. 543. When the facts of the two cases are understood, we think there is no conflict. In Gentry's Case a jury commission was appointed as the law directs. The point there arose as to an irregularity in the operation of the commission. The trial judge objected to four of the grand jurors whom the commission had selected, erased their names from the list, and directed the commission to select others in their stead, which was done.

So the real point involved was that the grand jurors brought into court were not the ones selected by the jury commission, because the four first selected were not included in the list, thus coming directly under subdivision 1, art. 361, C. C. P. 1925, which provides that a challenge to the array is available on the ground "that those summoned as grand jurors are not in fact those selected by the jury commission." The record showing that Gentry was in a position where he might have exercised such challenge to the array, it was held that his failure to do so was a waiver of his right to complain. In the present case no jury commissioners were appointed at all at the preceding term of court to select a grand jury, and such failure was held under the showing made in the record to have been an arbitrary and willful disregard of the plain provisions of the statute; hence a different rule is applied, as is pointed out in our original opinion.

[7] It is suggested in the motion for rehearing that, if our views are adhered to as indicated in our former opinion, the order of the court should direct that the prosecution be dismissed under the present indictment. Whether the failure to appoint a jury commission was an arbitrary and willful disregard of the statute necessarily involved a question of fact which might appear differently upon another trial; hence we thought it improper to order a dismissal. If it be known to the prosecuting officer that the facts will be the same as appears in this record, prosecution under the present indictment may be dismissed and another indictment secured.

The state's motion for rehearing is overruled.

CARPENTER v. SOUTHERN PROPERTIES, Inc., (No. 10059.)*

Court of Civil Appeals of Texas. Dallas, May 14, 1927.

Rehearing Denied June 11, 1927. Writ of Error Refused Nov. 2, 1927.

1. Contracts ⊗⟞117(2)—Covenant of ice wagon employee not to engage in same business in same territory for reasonable time after termination of employment is valid.

Negative covenant of employee operating ice wagon, prohibiting him from engaging in same character of business in same district in which he worked as employee for reasonable space of time after termination of his employment, is valid.

2. Contracts ⊗⟞117(2)—Covenant of ice wagon employee limiting right to engage in business after termination of employment is not favored.

Court will not favor covenant of employee operating ice wagon which prohibits him from

engaging in same business in same territory for reasonable time after termination of employment.

**3. Injunction ⊜61(2)—Ice company seeking to enforce covenant of former ice wagon employee limiting right to engage in business after termination of employment must prove that covenant was necessary and reasonable.**

Where ice company seeks to enforce covenant of former ice wagon employee prohibiting him from engaging in same character of business after termination of employment, it has burden of proving that covenant was necessary to protect its good will and reasonable as to duration of time and as to territory affected.

**4. Injunction ⊜61(2)—Valid covenant of ice wagon employee limiting right to engage in same business after termination of employment is enforceable by injunction.**

Where covenant of ice wagon employee prohibiting him from engaging in same business in same territory for reasonable time after termination of employment is necessary and reasonable, it can be enforced by injunction.

**5. Injunction ⊜128—Evidence in injunction suit held to sustain finding that covenant of foreman of ice wagon drivers limiting right to engage in business after termination of employment was necessary and reasonable and hence valid.**

In suit to enjoin breach of covenant of foreman of ice wagon drivers not to engage in business of selling or delivering ice within specified portion of city for two years after termination of employment, evidence held sufficient to sustain finding that covenant was necessary to protect employer's good will and reasonable as to time and territory, and hence valid.

**6. Equity ⊜66—He who seeks equity must do equity.**

It is a fundamental principle of equity that he who seeks equity must do equity.

**7. Equity ⊜65(1)—He who comes into equity must come with clean hands.**

It is a fundamental principle of equity that he who comes into court of equity must come with clean hands.

**8. Equity ⊜65(2)—Whether former employer is precluded by its breach of employment contract from equitably enforcing covenant limiting right of former employee to engage in business is not determined by insolvency of former employee.**

In determining whether former employer is precluded by reason of its breach of employment contract from equitably enforcing valid covenant in contract prohibiting employee from engaging in same business in same territory for reasonable time after termination of employment, fact that former employee is insolvent and that a damage suit might be fruitless is not determinative.

**9. Contracts ⊜164—Contract of sale and contract on attached paper for employment of seller held one contract.**

Contract whereby ice retailer sold equipment to large ice company and another contract written on attached paper and executed at same time providing for employment of seller held to constitute one contract.

**10. Contracts ⊜171(1)—Consideration of contract whereby ice retailer sold equipment to ice company held to include company's performance of employment contract.**

Consideration of contract whereby ice retailer sold his equipment to large ice company and entered its employ held to include performance of employment contract by company rather than making of employment contract only.

**11. Equity ⊜65(2)—Ice company held precluded from equitably enforcing covenant limiting right of former employee to engage in business, where it first breached employment contract.**

Ice company, held precluded from enjoining former employee from violating valid covenant in employment contract prohibiting him from engaging in same business in same territory for reasonable time after termination of employment, where it had first breached employment contract by discharging him before end of agreed term of employment.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit for injunction by the Southern Properties, Inc., against H. Carpenter, who brought a cross-action. From a judgment in favor of plaintiff, defendant appeals. Reversed and remanded.

White & Yarborough, of Dallas, for appellant.

Locke, Locke, Stroud & Randolph, of Dallas, for appellee.

JONES, C. J. This is an injunction suit instituted by appellee, Southern Properties, Inc., against appellant, H. Carpenter, to restrain him from engaging in the ice business in a described territory in the city of Dallas for a period extending to the 15th of May, 1928, with a prayer for the immediate issuance of a temporary writ. A restraining order was granted ex parte on the filing of the petition to remain in force until a designated day and appellee notified to appear on said day and show cause why such restraining order should not be continued as a temporary injunction. Appellant answered the suit on its merits, and also filed a cross-action against appellee for damages alleged to have been suffered by reason of the issuance of the restraining order. After two postponements of this hearing, during which time the restraining order was continued in force, the case was heard by agreement on its merits,

and a final judgment rendered enjoining appellant from engaging in the ice business in any manner in the described territory for the said period of time, and against appellant on his cross-bill. From this judgment appellant has duly perfected an appeal. The following are the facts:

Prior to the 2d day of March, 1926, appellant was engaged in the ice business, purchasing his supply at wholesale and selling and delivering it personally to the retail trade. All his activities in this business for a period of approximately 20 years were within a territory bounded on the west by Trinity river, on the south by Canton street, on the east by Harwood street, and on the north by McKinney avenue. This territory embraced the major portion of the central business section of the city of Dallas. Appellant's customers were drawn from every part of this territory, but their number was small as compared with the total number of consumers of ice in this district. Appellee is a corporation engaged in the manufacture and sale of ice to the wholesale and retail trade in the city of Dallas, its retail customers being supplied by employees operating ice wagons for delivery of ice, and being secured mainly through the individual efforts of such employees, appellee's officers having no direct contact with retail consumers of ice.

On March 2, 1926, the parties entered into an agreement, evidenced by two written instruments, by means of which appellee purchased appellant's equipment, consisting mainly of a team of two horses, a double set of harness, and a "1-¾ full platform ice wagon complete," for the price of $575, $275 of which was to be paid in 90 days, and for the further consideration that appellant be employed by appellee "in accordance with the terms of an employment contract offered to the seller for signature and signed simultaneously with the execution hereof." In addition to the delivery to appellee of the above-described properties as a consideration for the payment to appellant of $575 and the execution of the employment contract, appellant agreed that:

"If at any time hereafter he ceases, for any cause or in any manner whatever, to be employed by the said Southern Properties, Inc., he will not engage, to any extent whatever, directly or indirectly, for himself or for another or others, as proprietor, employee or otherwise, in the business of selling or delivering ice within that portion of the city of Dallas, Tex., bounded by the Trinity river on the west, by Harwood street on the east, by Canton street on the south, and by McKinney avenue on the north, for a period of 2 years after his said employment with Southern Properties, Inc., shall cease."

The contract of employment was attached to the other contract and recites that appellee has employed appellant to perform any service appellee may direct him to do in the city of Dallas in connection with the selling and delivering of ice, and "particularly as a foreman or supervisor of drivers of wagons engaged in the delivery of ice." Clauses 2 and 3 of the said contract are as follows:

"(2) The employee will not leave the employment of the employer for a period of one year from the date hereof, and the employer will not terminate the employment without just cause before the expiration of a like period. After the expiration of one year from the date hereof, the employment shall be terminable at the will of either party at any time.

"(3) The employee shall receive such wages as the employer may determine from time to time, such wages to be at a rate not less than $4 per day, payment to be made on the 20th day of each calendar month for the period from the 1st to the 15th, inclusive, of such calendar month, and on the 5th day of each calendar month for the period from the 6th day to the last day of the preceding calendar month."

The property above described was immediately delivered to appellee and the $300 cash payment made to appellant. The $275 deferred payment, by direction of appellant at the time of the execution of the contract, was paid to another party at the expiration of the 90 days, and appellant at once entered the service of appellee. On May 15, 1926, appellant was discharged from such service and has not been permitted by appellee to perform any service for it under said contract since said date. On the theory that this discharge was without just cause and was a breach of the employment contract, appellant sued appellee in a justice court in Dallas county to recover the minimum wages of $4 per day for the 45 days following his discharge on May 15th, and on August 26th was awarded judgment against appellee for $180, the full amount. Later he instituted suit for the same purpose in a county court at law of Dallas county to recover the same wages for the 63 days following the expiration of the 45 days, and was awarded judgment for $252, the full amount. These two judgments compensated appellant under his employment contract for a time extending from May 15, 1926, to September 1, of the same year, leaving him without compensation for the remainder of the contract year, from September 1 to March 2, 1927.

A short time before the institution of this suit on February 17, 1927, appellant purchased a small equipment and began the work of selling ice in the described territory. His work mainly at this time was "lining up" customers for the spring and summer trade, though he delivered ice to a few of his old customers and intended to make a thorough canvass of the district for his former customers and others before the heavy deliveries of ice in the spring and summer, but was stop-

ped by this injunction. His intention is to continue such work in the described territory unless he is prevented from doing so by a restraining order of the court.

Appellee filed this injunction suit before the expiration of the year for which it employed appellant without the right of discharge save for "just cause." There is no explanation in appellee's petition for injunction as to why appellant did not continue in its service for said year, nor is there any allegation that he was discharged for just cause. There is likewise no offer by appellee to compensate appellant under the contract of employment for the time remaining after the said 1st day of September, in case it should be determined that appellant was due any compensation for such time.

Appellee instituted this suit on the theory that the covenant entered into by appellant, that he would not engage in the business of selling or delivering ice within the defined district for a period of two years after he ceased to be in its employ, was reasonable and necessary to protect its business and good will; that the consideration for appellant's covenant not to engage in such business for the stated time was the payment of the $575 and the execution of the employment contract, and not its performance, and as appellant received the money consideration and appellee executed and delivered the employment contract and employed appellant in accordance with its terms, appellee had fully performed its contract obligations and thereby became entitled to enforce the covenant by means of the injunctive process of a court of equity; that if the discharge of appellant constituted a breach on the part of appellee, the contract nevertheless is still in force by reason of appellant's action to keep it in force as evidenced by his contract in accepting the deferred payment after such breach, and by enforcing the employment provision of said contract by means of the two suits for damages, and the violation of the negative covenant by appellant could be prevented by an appeal to the equitable powers of the court.

The suit was defended on the theories (a) that the good will that attached to appellant's business in the defined district, previous to his sale of his equipment to appellee, was not a part of the purchase made by appellee, and his subsequent resumption of the ice business in the same territory was not a violation of any term of the sale contract; (b) that as the number of patrons secured to himself during the time preceding the contract and the number of patrons secured for appellant during the short time he was in its employ was inconsiderable in comparison to the great number of consumers of ice in the defined district, the covenant that he should not engage in any manner in the ice business during the space of two years after such employment had ceased, was neither reasonable nor necessary, and was therefore unenforceable; (c) that as appellee bound itself to give appellant employment for one year and permitted his discharge within that period of time only on just cause, and as appellee had discharged appellant without just cause after only two and a half months of employment, and thereby became the first wrongdoer, it cannot appeal to a court of equity to prevent any subsequent breach of the contract on the part of appellant.

The trial court adopted appellee's theory of the law as controlling in this case and entered the judgment from which this appeal is prosecuted. Appellant presents his theories by appropriate assignments of error and on them bases the propositions of law on which he rests this appeal. These are substantially as given above, except that it is contended that the undisputed evidence shows that appellee failed to discharge the burden of proving that the negative covenant it seeks to enforce was reasonable and necessary. The court filed findings of fact and conclusions of law. These findings are briefly given above, and the conclusions of law sustain appellee's theory of the case.

[1-5] The customers secured and the good will built up for appellee's business is done largely by those employees who operate the ice wagons, as such employees are usually the only persons who come in contact with the customers. The good will and the business of appellee necessarily is personal to such an employee in the district in which he operates. It is therefore a recognized doctrine of the law in this state that a negative covenant in the employment contract of such employee, prohibiting him for a reasonable space of time after his employment is severed to engage in the same character of business in the same district in which he had operated as such employee, is valid and enforceable. Courts, however, do not look upon such contracts with favor and, when such a covenant is attempted to be enforced, require that the employer establish the fact that such negative covenant was necessary to protect the good will the former employee had built up for his employer, and that the prohibition is reasonable, both in its duration of time and in the territory over which it operates. When this is shown, a court of equity will enforce such covenant by enjoining the former employee from engaging in the same business in the prohibited territory. Tex. Ice & C. S. Co. v. McGoldrick (Tex. Civ. App.) 284 S. W. 615; Bettinger v. Fort Worth Ice Co. (Tex. Civ. App.) 278 S. W. 466; City Ice Delivery Co. v. Evans (Tex. Civ. App.) 275 S. W. 87. In the instant case the trial court has found that the negative covenant sought to be enforced was both reasonable and necessary, and we are not prepared to say that there is not substantial evidence sustaining such finding. All

assignments of error attacking this finding are overruled.

[6-8] The only other question for consideration is whether appellee should be permitted to appeal to a court of equity to enforce a provision in a contract whose terms it had been the first to breach, and, kindred to this, can appellee be awarded relief by a court of equity when it refuses to do equity in reference to the very matter about which it complains? It is a recognized fundamental principle of equity that he who seeks equity must do equity, and he who comes into a court of equity must come with clean hands. Has appellee offended in either particular against this great principle of equity, which prescribes a condition for the seeker of equitable relief? If so, then it cannot be granted the relief prayed for, even though it could successfully maintain a suit for damages against appellant on the very facts on which appellee bases its prayer for equitable relief for a violation of the covenant. On this inquiry, the fact that appellant is insolvent and a damage suit might be fruitless is not determinative of appellee's right to invoke the equitable powers of the court.

[9, 10] While the agreement entered into by the parties is expressed in two written instruments, they constitute in fact one contract. Through this contract appellee says to appellant: You surrender to me your equipment for carrying on your business and and your business; and in consideration therefor I will pay you the sum of $575 and take you into my employment at the minimum price of $4 per day on condition that you remain in my employment for a period not less than one year, provided you do the work assigned you and prove yourself worthy of such trust; and provided, further, that after the expiration of the year's employment, either may terminate such employment at will, but you shall not re-enter in any manner upon the same business in your old territory until the lapse of two years after your employment has ceased. It is a fair inference from this record, that appellant's only means of earning a livelihood was that of selling ice in the prescribed district. He had followed this business in this district for approximately 20 years. On the integrity of appellee's promise to give him such employment for a period of one year, he surrendered this means of earning a competency. As shown by the judgments of two courts, appellee failed in its promise, and without just cause—with no failure on the part of appellee to do the work comprehended by the contract, and with no showing that he proved himself unworthy of such employment—he was discharged in the short space of time of two and one-half months and turned away without any means of earning a competency.

[11] The conditions under which appellee has invoked the equity powers of the court and its attitude in reference to the subject-matter of the litigation it has set in motion is that, notwithstanding it first violated its solemn contract with appellant and has refused adequately to compensate him therefor, such court should nevertheless, by use of its injunctive power, compel specific performance in the matter of the negative covenant. We think such conduct denies to it the relief prayed for, and under the record the trial court should have refused the injunction and relegated appellee to whatever remedy in law it can show itself entitled. We sustain the assignments of error on this issue. Roberts v. Lovejoy, 25 Tex. Supp. 437; 32 C. J. 208, § 325; L. & L. & G. Ins. Co. v. Clunie (C. C.) 88 F. 160, 170; 14 R. C. L. 353, § 56; Westerman v. Mims, 111 Tex. 29, 227 S. W. 178; Smith et al. v. Spencer, 81 N. J. Eq. 389, 87 A. 158; Danciger v. Stone (C. C.) 187 F. 853, 858.

For the reason that the lower court tried this cause apparently on the wrong theory, it may be that the subject of the breach of the contract by appellee was not fully developed, and as this case must be reversed to give appellant opportunity to endeavor to make out his case as to damages for the wrongful issuance of the injunction, we reverse the entire case for another trial not inconsistent with this opinion.

Reversed and remanded.