Gaylord I. WELLS, Appellant,

v.

L. A. (Jack) POWERS et al., Appellees.

No. 16010.

Court of Civil Appeals of Texas.

Dallas.

Feb. 9, 1962.

Rehearing Denied March 9, 1962.

Rosenfield, Berwald & Mittenthal, Dallas, for appellant.

Bruce Graham and William C. Parker, Greenville, for appellees.

YOUNG, Justice.

Appellant had sought a temporary injunction against both appellees from violating the terms of an alleged restrictive covenant, whereby Powers had bound himself not to engage in the automobile repair business within a three mile radius of White Rock Automotive (8916 Garland Road) for five years following sale of said business by Powers to Jack Wilkie of date September 25, 1959. On hearing, the application for temporary injunction was refused, followed by this appeal.

Defendant Powers had for many years been owner of the automobile repair shop known as White Rock Automotive, selling same on above named date to Jack Wilkie, together with all equipment and good will for $15,000, a clause of the contract of sale providing: "As part of the consideration of this sale, it is agreed and understood that I, the said L. A. Powers, will not engage in a similar business as I now have and am selling to the said Jack Wilkie, for a period of five years from the date of this instrument, within a three mile radius of the

WHITE ROCK AUTOMOTIVE." On July 15, 1960 Jack Wilkie sold to plaintiff Wells the same business known as White Rock Automotive for a cash consideration of $15,000, and Wells is presently operating same. The instrument evidencing this sale was drawn by a real estate man. For most part it detailed the equipment sold and did not refer to good will of the business or to above quoted restrictive covenant between Powers and Wilkie, prior owners. However, the parties to the bill of sale (Wilkie and Wells) by later instrument of April 11th, 1961 recited that the sale was intended to include "all rights, benefits and powers accruing or to accrue to Jack Wilkie but by virtue of that certain contract dated September 25, 1959 executed by L. A. Powers to Jack Wilkie * * *"; and expressly referring to the restrictive covenant in question, which instrument was consistent with the testimony of appellant that the trade with Wilkie of July 1960 was not only inclusive of all equipment but also the benefits of the L. A. Powers' restrictive covenant.

Defendant Powers, already owning the Lot designated as 8912 Garland Road, and adjoining the numbered 8916 property so purchased by appellant, caused the erection of a building thereon, leasing same to co-defendant Anderson on January 1, 1961 at $250 per month who has commenced to operate it as an automobile repair shop and known as Diceman Hill Garage. Powers also sold to Anderson much of the equipment for this new venture secured by chattel mortgage of $2597. It is not disputed that Powers became a part-time employee of Anderson as a mechanic at this adjacent location, the quarterly Federal Tax Return of Diceman Hill Garage for the quarter ending March 1961 showing the payment of salary to L. A. Powers of $540. Anderson had been employed by appellant as a mechanic prior to his lease of the new Powers building and testified to being familiar with the restrictive covenant.

Plaintiff Wells testified that his first certain knowledge of the connection of Powers

with the business of Diceman Hill Garage was when a sign was put up on the building reading: "DICEMAN HILL GARAGE Jack Powers Mechanic 8912 DA 1–2287". About the same time (March 22, 1961) an article had appeared in "The Big-D News Shopper" a community publication, reading in part: "DICEMAN HILL GARAGE NOTES PROGRESS. Jack Powers and Andy Anderson are co-owners of the Diceman Garage where they have all the latest equipment to take care of your car in the best possible manner. Jack Powers built the first auto repair shop in the neighborhood in 1948 and has been there ever since. He installed the first air conditioning unit in a car in Dallas in 1941 and has been servicing and installing since that time. He has had 24 years experience as an auto mechanic and was shop foreman for Greyhound Lines in Dallas for 7 years. * * *". Plaintiff then through his attorneys had written both defendants calling their attention to the restrictive covenant, and insisting that they desist from its violation, else legal steps would be taken for enforcement of his rights. He testified that shortly thereafter an article had appeared in said "Big-D News Shopper" retracting the previous item and headed "Andy Anderson Sole Owner"; the latter on April 14, 1961 causing an instrument to be filed at the courthouse registering the trade name of Diceman Hill Garage and designating himself as sole owner. Plaintiff further stated that he had seen some of his former customers at the Diceman Hill location and that since January 1, 1961 his business had fallen off at this the "peak season".

■ It is not disputed that L. A. Powers became a part-time employee of his co-defendant Anderson subsequent to January 1, 1961, nor do appellees question legality of this restrictive covenant. Appellant asserts that the undisputed evidence fully supports these further propositions or points, entitling him to a temporary injunction as a matter of law: (1) that this chose in action, to-wit, the restrictive covenant was assignable and in fact its benefit had passed to appellant Wells; (2) that the term "engage in a competitive business" used in the covenant was inclusive of the activities of defendant Powers, working as an employee of Anderson who was operating a similar business as that sold by Powers to Wilkie; (3) that a third party to-wit, co-defendant Anderson may also be enjoined from employing defendant Powers; (4) and in sum, the proof introduced by appellant showed a probable right and a danger to that right; the trial court thereby abusing its discretion in refusing to grant the temporary injunction sought. We conclude that these points of law are controlling of the facts of this record; and that plaintiff was entitled to an injunction as will hereinafter be shown. It must be noted however that appellant's prayer for injunction has been too broadly stated; he seeking to restrain Powers from renting of his building to Anderson or its use by the latter in a competitive business. Under a free enterprise system, defendant Powers had the undoubted right to erect, and lease his new structure but not so as to affect the restrictive covenant already made by him.

Defensively, it is pled that the 1959 Powers-Wilkie contract of sale of White Rock Automotive did not run to the vendee "or his assigns"; (1) in other words that at time of sale to Wilkie he did not intend that it should be for benefit of anyone other than Jack Wilkie; (2) that at least there was contained therein an implied prohibition against any assignment; and (3) that he, Powers, is only a part-time employee of Anderson and that such employment does not violate the terms of the restrictive covenant "That I, L. A. Powers, will not engage in a similar business * * *.".

■ Art. 569, Vernon's Ann.Civ.St.: "The obligee or assignee of any written instrument not negotiable by the law merchant, may by assignment transfer all his interest therein to another." This provision is obviously all-inclusive on its face, excluding only from its operation contracts in matters of personal trust and skill. Ditt-

man v. Model Baking Co., Tex.Com.App., 271 S.W. 75. The 1959 contract of Powers to Wilkie does not even impliedly prohibit its assignment, the proviso therein relied upon by appellees referring merely to the deferred purchase price when it prohibited the vendee from selling or removing the equipment "without consent in writing of the said L. A. Powers." The reference therefore was to the goods and chattels belonging to the business sold and not the restrictive covenant. The later sale to appellant being in cash, it may be presumed that such earlier Powers-Wilkie indebtedness had been fully paid. There being nothing in the contract indicating any intention of the parties that it should not be assigned, we are bound by the ruling of Central Power & Light Co. v. Purvis, Tex. Civ.App., 67 S.W.2d 1086, writ ref., where in a similar situation the restrictive covenant was held assignable; the court holding in part: "The appeal presents the major question of whether the agreement of appellant to furnish electric power to Purvis, the then owner of the premises to be served and assignee of the right to such service, is of such nature as to render it assignable by Cromack to his successors in title. We have concluded that the contract is assignable and the appellee, as his assignee, succeeded to all Cromack's rights thereunder." See also Reo Motor Company v. Goad Motor Company, Tex.Civ.App., 24 S.W.2d 67, writ ref. In general, alike restrictive covenants have been held to be so connected with the good will of the business sold, that the courts of other jurisdictions have uniformly held that "An express assignment of the covenant to the subsequent purchaser, however, is unnecessary; upon a subsequent sale of the business, such covenant will pass as an incident of the business even though not expressly assigned." 4 Am.Jur. p. 242.

■ Likewise, we conclude that appellant is entitled to similar relief against appellee Anderson, Diceman Hill Garage shop owner; our courts consistently holding that a third party cannot in any manner inter-

fere with contractual obligations or covenants. Cooper v. Steen, (by this Court) 318 S.W.2d 750; Davis v. Freeman, Tex. Civ.App., 347 S.W.2d 650. In 26 A.L.R.2d, p. 1240 is an extensive discussion of this principle inclusive of the following statement: "The interest in a contract being a property right, a party thereto has a right of action against persons who are by their conduct substantially interfering with the performance thereof." Also it is stated in 25 Tex.Jur. p. 33 as follows: "As announced originally in England in the case of Lumley v. Gye, the principle which regards as a distinct tort the intermeddling with a contractual relation was thought to be applicable only in a case where a servant was induced to break his contract of employment. The Texas Courts recognize no such restriction. Our cases contain instances where liability has been predicated on a wrongful interference with the relation of builder and owner, principal and broker and vendor and purchaser."

In Daniel v. Goesl, Tex., 341 S.W.2d 892, a case clearly analogous in fact, our Supreme Court quotes from 43 C.J.S. Injunctions, § 84, p. 566, viz.: "Where an established business has been sold with its good will and there is a valid covenant not to compete, a breach is regarded as the controlling factor and injunctive relief follows almost as a matter of course. In such cases the damage is presumed to be irreparable, and the remedy at law is considered inadequate. It is not necessary that the buyer first prove special pecuniary damages or show an actual loss of customers who might in any event have discontinued their patronage. Injunctive relief may be given, even though only nominal damages are shown or although no actual damage is shown."

It was concluded in Daniel v. Goesl, supra, "that under the undisputed facts in this case the petitioners were entitled to temporary injunction as a matter of right and the trial court's failure to grant the temporary injunction was an abuse in law of the discretionary power vested in him."

Likewise under the undisputed facts of this case a similar ruling must be made.

The order of the court denying restraint is accordingly reversed and the cause remanded to the trial court with instructions that a temporary injunction issue against appellee Powers requiring him to desist from working for co-defendant Anderson; likewise enjoining Anderson from employing Powers in the adjoining automobile repair business; both of the named parties being further enjoined from advertising or holding the said Powers out as working for Anderson in operation of the Diceman Hill Garage.

Reversed and remanded with instructions.