**T. E. MOOR & COMPANY, Appellant,**

v.

**Paul HARDCASTLE, Appellee.**

No. 6932.

Court of Civil Appeals of Texas.

Beaumont.

Nov. 2, 1967.

Rehearing Denied Nov. 29, 1967.

Keith, Mehaff & Weber, Beaumont, for appellant.

W. G. Walley, Jr., Beaumont, for appellee.

PARKER, Justice.

Paul Hardcastle, as plaintiff, brought this declaratory judgment action against Ted E. Moor & Co., a partnership composed of T. E. Moor and Ted E. Moor, Jr., defendants, to declare all parts of a contract dated April 12th, 1961 between Paul Hardcastle and C. T. Smelker & Co. to have terminated and all obligations of Hardcastle to have ended on the date of the death of C. T. Smelker on February 28th, 1964, determining and declaring that the defendants had no rights under such April 12th 1961 contract. Such contract consisted of (a) the employment of Paul Hardcastle by C. T. Smelker & Co. and (b) a non-competing agreement on the part of Hardcastle effective within Jefferson County, Texas for a period of five years after the termination of the employment agreement, and providing "It is mutually agreed and understood that all agreements and covenants herein are severable." Defendants in their answer contended the employment agreement of Hardcastle terminated on July 1, 1965 when defendants acquired the business and assets of C. T. Smelker & Co., but that the non-competing agreement of Hardcastle was transferred to defendants and is valid, binding and enforceable against plaintiff; that since July 1, 1965 plaintiff has violated his agreement not to compete. Defendants' by cross action sought a permanent injunction against plaintiff from any manner violating or breaching his agreement not to compete, for their damages and for declaratory judgment in accordance with their contentions.

Trial was to a jury. At the conclusion of the evidence, a joint motion by the parties to withdraw the case from the jury, as there were no fact issues, was granted by the court. Judgment was rendered that the contract between plaintiff, Paul Hard-castle, and C. T. Smelker & Co. is and was not assignable, as a matter of law, that the same terminated on the death of the said C. T. Smelker on the 27th day of February, 1964, and the defendants, Ted E. Moor and Ted E. Moor, Jr., d/b/a T. E. Moor & Co. have no rights under said contract; and that the cross-plaintiffs T. E. Moor and Ted E. Moor, Jr., d/b/a T. E. Moor & Co. and also as C. T. Smelker & Co. take nothing by their cross action against cross-defendant Paul Hardcastle. The parties will be referred to here as they were in the trial court.

The undisputed evidence shows: That plaintiff, Paul Hardcastle, and his son, Frank Hardcastle, organized and operated the Hardcastle Insurance Agency from 1959 until April 12, 1961. On that date they sold the agency to C. T. Smelker & Co. by written instrument which contained the following provision:

"and the assignors do also hereby covenant and agree that neither of them will do, assist in, or cause to be done anything which would deny, reduce, impair, or endanger the full enjoyment, receipt, and realization by the assignee herein of all future commissions assigned herein and that neither of them will solicit property or casualty insurance from the owners of the policies described above on behalf of themselves of any person, company, or agency other than C. T. Smelker & Co."

Paul Hardcastle testified that he and his son sold and conveyed to C. T. Smelker & Co. all of the assets of the Hardcastle Insurance Agency, including policies, good will and future commissions. The contract itself is effective to do so.

At the same time on the same date, April 12, 1961, Paul Hardcastle entered into a contract with C. T. Smelker & Co. by which he agreed to: (a) work as an employee of C. T. Smelker & Co. as a property and casualty insurance solicitor, with provisions that Smelker pay Hardcastle for

his services, and (b) a non-competing agreement which is as follows:

"This contract shall be in effect from the ———— day of April, 1961, and remain in effect until it is terminated. It is mutually agreed that this contract may be terminated by either Smelker or Hardcastle upon ten (10) days written notice, in which event Hardcastle's right to commissions as described herein shall cease, the policies sold by Hardcastle during the existence of this contract shall remain the property of Smelker, and Smelker shall have no further obligations hereunder.

"Hardcastle agrees not to solicit insurance for or on behalf of himself or any person, company, or agency, other than Smelker during the effective period of this contract. Hardcastle also covenants and agrees that in the event of termination of this agreement, as provided herein, for whatsoever reason, he shall not, either directly or indirectly on his own account, or for or on behalf of any person, company, or agency, other than Smelker, record, solicit, or otherwise procure insurance from individuals, partnerships, or corporations within Jefferson County, Texas, for a period of five (5) years after the termination of this contract. Further, Hardcastle agrees during the continuance of this contract and after its termination for the period specified, that he will not directly or indirectly divert or take away or attempt to divert or take away any of the customers, business, or patronage of such customers as are served by Smelker. Smelker shall have the right to enforce these covenants by injunction or other appropriate remedy at law or in equity.

"It is mutually agreed and understood that all agreements and covenants herein are severable and that in the event any of them shall be held to be invalid by any competent court, this contract shall be interpreted as if such invalid agreement or covenant were not contained herein."

The instruments of April 12, 1961, neither expressly provided for nor prohibited the assignability of either.

It is undisputed that Paul Hardcastle worked under C. T. Smelker until the latter's death on February 27, 1964. C. T. Smelker & Co. was community property of C. T. Smelker and his wife, Laverne Nelson Smelker. Under the will of C. T. Smelker, Laverne Smelker acquired all of his estate. Laverne Smelker secured a license and operated C. T. Smelker & Co. Paul Hardcastle continued to work for Laverne Smelker under the same terms and provisions of the original employment contract. No new contract was entered into between them. Effective as of July 1, 1965 Laverne Smelker conveyed to T. E. Moor & Co. the insurance business of C. T. Smelker & Co., the assets of the company including good will, the right to do business in the name of C. T. Smelker & Co. for ten years and also transferred to T. E. Moor & Co. "seller's rights in and to any non-compete agreements by solicitors now or heretofore employed by said agency * * *". Plaintiff Paul Hardcastle ceased to be employed by C. T. Smelker & Co. on that date, secured a new license and was employed by Hall & Hall about August 1, 1965 as a commissioned solicitor. Since such date Hardcastle has solicited business from customers he had at the Hardcastle Insurance Agency and at C. T. Smelker & Co. Thus, he caused T. E. Moor & Co. to lose $6,909.00 worth of premiums with the Moors failing to receive in commissions $1,374.90.

■ The law in this State is well settled that the seller of a business may validly agree not to compete with the purchaser, and an employee may validly agree not to compete with an employer, as long as the restraint imposed is reasonable. The reasonableness of the restrictions in this case are not under attack. T. E. Moor and Ted E. Moor, Jr., d/b/a C. T. Smelker & Co., have never sought to force Paul Hardcastle to work for them but do seek to enforce his

agreement not to compete with them for the time and within the area of Jefferson County as agreed upon by Hardcastle and Smelker on April 12, 1961.

■ Not only by the express terms of the contract is the non-competing agreement to be interpreted separately from the employment agreement, but under the authoritative decisions of the Supreme Court of this State the non-competing agreement is severable, valid, enforceable and assignable under Art. 569, Vernon's Ann.Civ.St.

In Texas Practice, Vol. 6, Remedies, Injunctions and Other Extraordinary Proceedings by Lowe and Archer, in Sec. 276, pp. 261 and 262, it is stated:

"§ 276. Personal Service and Sale of Business Contracts, Injunction to Enforce

"Ordinarily equity will not enforce a contract for purely personal services. However, in cases where the services are of such unique character that similar services cannot be readily obtained if the contract is breached, equity will take cognizance thereof and injunctive relief against breach of the negative covenants in such contract will be afforded. Also, negative covenants in certain personal service contracts will be enforced by injunction even in the absence of unique and unobtainable qualifications where the employee agrees not to compete within a reasonable time within a limited territory, or where the employee necessarily learns trade secrets of the employer which could be used to the employer's disadvantage if such competition were permitted. Also similar provisions in contracts for the sale of business and good will may be enforced by injunction."

Some of the decisions cited in the above section will be discussed hereinafter. In the sale of July 1, 1965 by Laverne Smelker to T. E. Moor & Co., she did not convey any agreement to work but did convey all non-competing agreements. On the question of severability of contracts, Corbin on Contracts at Sec. 1204, states:

"It is almost universally held that a contract for personal services will not be specifically enforced, either by an affirmative decree or by an injunction. *The discussion of negative contracts hereinafter will show that in certain cases express and implied negative promises will be specifically enforced by injunction, even though they are contained in a more extensive contract involving personal service.* Even in these cases, however, it will be seen that the injunction is granted for the purpose of preventing an irreparable injury caused by the breach of the negative promise itself, and not for the purpose of indirectly enforcing specifically the affirmative promises to render a personal service."

And at Sec. 1210, it states:

"Negative promises in reasonable restraint of trade and competition have been enforced by injunction, even though the return promise of the plaintiff was one to render a personal service such as would not be affirmatively enforced. * * *

"A contract by an employee not to open a shop, business, or profession in direct competition with his employer for a reasonable period of time after leaving his employ has frequently been specifically enforced by injunction. In such cases it makes no difference that the defendant's leaving was not a breach of contract, or that his services were not unique or his skill extraordinary, or that the employer can easily get an efficient substitute. The purpose of the injunction is not to induce the defendant to continue to service the plaintiff or to prevent injury caused by his leaving the service; it is to prevent him from engaging in unfair competition and stealing away the plaintiff's customers contrary to his express promise."

The Texas Supreme Court follows this distinction between covenants for personal services, which are not enforceable by injunction, and covenants not to compete, which are enforceable. Thus, in Mission Independent School Dist. v. Diserens, 144 Tex. 107, 188 S.W.2d 568, 569, 161 A.L.R. 877 (1945), the Supreme Court noted:

> *"As to the first contention, it is true that chancery courts have refused to grant mandatory injunction specifically enforcing contracts for the performance of personal services.* It has been said that this refusal is based in part upon the difficulty of enforcement and of passing judgment upon the quality of performance and in part upon the undesirability of compelling the continuance of personal association after disputes have arisen and confidence and loyalty are gone. And in some cases, it has been observed, the decree would seem like the enforcement of an involuntary servitude. But to the contrary, it has also been pointed out that there may be negative promises in personal service contracts and within certain limits these may be be enforced by injunction. Restatement of the Law, American Law Institute, Volume II of Contracts, Section 379; * * *" 188 S.W.2d 568, 569. (Emphasis supplied)

See Weatherford Oil Tool Company v. Campbell, 161 Tex. 310, 340 S.W.2d 950 (1960).

The reason why such restrictive covenants are enforceable was noted by this court by per curiam opinion in LaRocca v. Howard-Reed Oil Co., 277 S.W.2d 769 (Tex.Civ.App.1955, n. w. h.):

> " * * * Restrictive covenants of this type are obviously entered into for the purpose of protecting the purchaser of the business in the enjoyment of good will of such business previously enjoyed by the seller. Such agreements have been universally upheld by the courts of this state so long as the restraint as to time and area are within reasonable limits * * * (citing Texas cases)."

And again:

> "The purpose of such restrictive covenants as the one the parties here entered into was to render effective the good will which the appellee bought from the appellant when he bought him out. Any activity or conduct on the part of the seller of good will which will probably impair or reduce the advantages of purchasing such good will constitutes a breach of the seller's agreement that he would not engage in the character of business in which he was previously engaged * * *."

And again in Houston Credit Sales Co. v. English, 139 S.W.2d 163 (Tex.Civ.App. 1940, n. w. h.), the appellate court observed:

> "Provision in a contract of employment binding the employee to refrain from engaging in a similar or competing business in the same territory and during a reasonable and definite time following the termination of such contract, is a common means of securing to the employer the good will and trade built up as a result of the employment therein promised * * *."

In Thames v. Rotary Engineering Co., 315 S.W.2d 589 (Tex.Civ.App.1958, wr. ref. n. r. e.), the court said:

> "First of all, we do not find any inhibition against the assignment or transfer of this type of covenant or agreement. These are not agreements to work, but are restrictive agreements promising not to compete. It has been held that such are transferrable or assignable as assets. Blaser v. Linen Service Corp. of Texas, Tex.Civ.App., 135 S.W.2d 509; Malakoff Gin Co. V. Riddlesperger, 108 Tex. 273, 192 S.W. 530."

In this Thames case there is nothing in the opinion to indicate there was an assignability provision in the contract. Reading the foregoing opinion, there can be no ques-

tion but that this opinion was authoritative as to this holding. The Supreme Court of Texas could not refuse writ of error n. r. e. without approving of this holding.

Here we have Hardcastle accepting the benefit of two contracts and now repudiating the disadvantageous part. This he cannot do. Daniel v. Goesl, 161 Tex. 490, 341 S.W.2d 892 (1960).

Defendants contend the non-competing agreement was validly assigned to them including the chose of action to enforce it. Defendants' contentions are sustained under the authority of Art. 569, V.A.C.S., and Citizens State Bank of Houston v. O'Leary, 140 Tex. 345, 167 S.W.2d 719 (1942) and opinions cited on page 721, where the court held:

"It is not the policy of the law of this State to favor restraints upon the alienation of property. Our courts have held that any species of property is assignable, and that 'everything which can be called a debt can be assigned, and the assignee may recover either in his own name or in that of his assignor.' In other words, any chose in action may be assigned and suit brought thereon by the equitable holder. Galveston, H. & S. A. R. R. Co. v. Freeman, 57 Tex. 156; Hopkins v. Upshur, 20 Tex. 89, 70 Am. Dec. 375; Lemar v. Garner, 121 Tex. 502, 513, 50 S.W.2d 769; Hoffman et al v. Magnolia Petroleum Co., Tex.Com. App., 273 S.W. 828; Dittman v. Model Baking Co., Tex.Com.App., 271 S.W. 75; 5 Tex.Jur., p. 7, § 6.

"The Legislature has provided that, 'The obligee or assignee of any written instrument not negotiable by the law merchant, may by assignment transfer all his interest therein to another.' Article 569, Vernon's Annotated Civil Statutes. Also see Reef v. Mills Novelty Co., 126 Tex. 380, 89 S.W.2d 210."

Although there is no writ history in Wells v. Powers, 354 S.W.2d 651, on page 653, (Tex.Civ.App.1962), there it was held that a noncompeting agreement was assignable:

"Art. 569, Vernon's Ann.Civ.St.: 'The obligee or assignee of any written instrument not negotiable by the law merchant, may by assignment transfer all his interest therein to another.' This provision is obviously all-inclusive on its face, excluding only from its operation contracts in matters of personal trust and skill." * * * "There being nothing in the contract indicating any intention of the parties that it should not be assigned, we are bound by the ruling of Central Power and Light Co. v. Purvis, Tex. Civ.App., 67 S.W.2d 1086, writ. ref., where in a similar situation the restrictive covenant was held assignable;"

The non-competing agreement, definite as to time and area, is to be construed with the sale of Hardcastles to C. T. Smelker. It is assignable, considered by itself or in connection with the sale. In Carpenter v. Southern Properties, 299 S.W. 440 (Tex. Civ.App.1927, wr. of error refused, November 22, 1927), it was directly held that in construing a sale in one instrument with a non-competing agreement after termination of employment in another instrument, that the non-competing agreement was valid, that the two instruments written and executed at the same time constituted one contract although the court refused to enforce the valid agreement not to compete because the employer had breached the employment contract. In the instant case there was no breach of the employment contract. Further, the non-competing agreement is severable from the employment agreement by the express agreement of the parties. The non-competing agreement and the sale by the Hardcastles are to be construed together, thereby consummating the purpose of conveying good will effectively to C. T. Smelker & Co. Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472, 475 (1942).

Each and all of defendants' points of error are sustained to the extent that this court holds:

(1) The employment of Paul Hardcastle terminated on July 1, 1965, not upon the death of C. T. Smelker.

(2) The non-competing agreement between Paul Hardcastle and C. T. Smelker & Co. is valid and was assignable under Art. 569, V.A.C.S. Between defendants as assignees of C. T. Smelker & Co. and plaintiff it is valid, binding and enforceable by defendants for five years after July 1, 1965.

(3) Defendants are entitled to a permanent injunction restraining Paul Hardcastle from competing with defendants and from violating the non-compete agreement.

The judgment of the trial court is reversed and judgment rendered for defendants in accordance with the above holdings.

STEPHENSON, Justice.

I respectfully dissent. The law is clear in this state that reasonable covenants not to compete are enforceable. If there had been no sale of the insurance agency by Mrs. Smelker and this action had been brought by her, injunctive relief would be in order. The only real problem arose upon the sale by Mrs. Smelker to defendants, with an attempted assignment of "sellers rights in and to any non-compete agreements." In the agreement made by plaintiff and C. T. Smelker & Company in which plaintiff agreed not to compete, *there was no provision made for assignment.* There is not a single case in this state in which it has been held, that in the absence of ratification, an agreement in an employment contract not to compete could be assigned unless the agreement provided it could be assigned. The law on this point is clearly stated in the opinion of Justice Pope, in Texas Shop Towel v. Haire, Tex.Civ.App., 246 S.W.2d 482 as follows:

"Where an employee makes a contract restricting his right to compete, and provides further that the contract is assignable, an employer may assign the contract. Those are cases in which the employee, not the employer, has controlled his future rights. (Cases cited).

"But, because an owner of a business may require from his employee a covenant not to compete; it does not follow that he can transfer the covenant to a buyer without the consent of the employee. 'An executory contract for personal services cannot be assigned by the employer, unless the employee assents to the substitution of the assignee as employer.' (Cases cited)."

In my opinion this assignment would not be permitted by the cases construing Article 569 V.A.C.S. In Southern Community Gas Co. v. Houston Natural Gas Corp., Tex.Civ.App., 197 S.W.2d 488, it is held that under this statute, all contracts, whether negotiable or not, are assignable with certain exceptions. That two well recognized exceptions are contracts establishing a personal relation and contracts providing for credit between the parties. I have concluded that the employment contract in this case established a personal relation between the parties and provided for credit. Such contract gave either party the right to terminate it upon ten days written notice, which demonstrated that plaintiff was imposing a confidence and trust in C. T. Smelker which gave Smelker practically unlimited control over plaintiff's ability to make a livelihood. Such contract also provided that Smelker agreed to extend credit to and carry on its books the accounts receivable of persons, partnerships and corporations to whom plaintiff has sold insurance, after the effective date of such contract, for a period of sixty days, which time could be extended by mutual agreement. See Oak Cliff Ice Delivery Co. v. Peterson, Tex.Civ.App., 300 S.W. 107.

The case of Thames v. Rotary Engineering Co., Tex.Civ.App., 315 S.W.2d 589 is

cited in the majority opinion as authority for the proposition that employment contracts with covenants not to compete are assignable. The situation is entirely different from that of this instant case. In the Thames case, the employment contracts were made with a partnership, from which various members withdrew and one died but none were added. Later the partnership assets were conveyed to a corporation made up of the surviving partners. The court had this to say:

> "It does not appear that any additional burden or hazard was cast upon the appellants (employers) or either of them, by the various changes * * *. By their continuing to work, without any apparent change in their contractual relations, we also believe that appellants acquiesced and consented to such changes by virtue of their continuing to accept their salaries and perform the services required."

There was no acquiescence or ratification in the instant case, as plaintiff did not return to work after the sale was made.

Even though it is stated in the majority opinion that plaintiff testified the sale included goodwill, I do not think this was the clear import of such testimony. The question was asked on cross examination:

> "Q. Now, Mr. Hardcastle, of course, this contract, when you sold your agency, you sold all the assets, the good will and the list of customers and policies."

The Court overruled the objection that the instrument spoke for itself was the best evidence. Plaintiff gave this answer:

A. "We just sold our agency."

A careful reading of the contract of sale from Plaintiff to C. T. Smelker Company does not indicate to me that goodwill was an asset included. There is no mention of goodwill and no right given to do business under the Hardcastle name. There appears to be only a sale of all of the right, title and interest in future commission to be derived from certain insurance policies. Furthermore, no mention is made in the sale as to any time limit nor area limit within which plaintiff agreed not to solicit insurance from the owner of the policies mentioned.

The majority opinion cites two cases as authority for holding there was a valid assignment of the covenant not to compete. These cases are Citizens State Bank of Houston v. O'Leary, 140 Tex. 345, 167 S.W.2d 719, and Wells v. Powers, Tex.Civ. App., 354 S.W.2d 651. It is noted that neither of these cases involved employment contracts and therefore could not be in conflict with the law set forth in the Texas Shop Towel v. Haire case, supra, and Oak Cliff Ice Delivery Co. v. Peterson case, supra.

I would affirm the judgment of the trial court.